## Caleb Smith and Wife v. Fourth Street Bank.

(Decided March 16, 1917.)

### Appeal from Daviess Circuit Court.

1. Homestead—Fraudulent Dispostion of—A homestead will not be lost by a fraudulent disposition thereof, since fraud to be actionable must result in injury.

2.  Homestead—Sale of—Reinvestment of Proceeds.—A debtor may
    sell his homestead and reinvest the proceeds in another home-
    stead, taking the title either to himself, to his wife, or to any per-
    son he pleases.

3.  Homestead—Sale of—Reinvestment of Proceeds.—A debtor may
    sell his homestead and dispose of the proceeds in any way he may
    see fit; and, if he reinvests the proceeds in another home within
    a reasonable time, the right of homestead is transferred to the
    property thus purchased.

4.  Homestead—Sale and Reinvestment—Exemption.—Where a debtor
    mortgaged his homestead and reinvested the money raised by the
    mortgage in a new homestead, the new homestead is exempt,
    since it is just as much within the spirit and reason of the statute,
    and just as fully protected by the statute, as if the old homestead
    had been sold outright and the proceeds reinvested in the new
    homestead.

C. W. WELLS and W. F. HAYES for appellants.

W. T. ELLIS for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Reversing.

The appellants, Caleb Smith and Mary E. Smith, are
husband and wife.

About 1895, Mary E. Smith and her brothers and
sisters inherited the Hunter tract of land in Daviess
county, from their father, Mrs. Smith inheriting a one-
fifth interest therein. Shortly thereafter, Caleb Smith
bought the interests of the other four heirs, and he with
his wife and family resided on the Hunter tract until
about 1909, when Smith and his wife sold it for $2,250.00.
They then removed to Owensboro and bought what
is known in the record as the Triplett street prop-
erty, for which he paid $2,900.00, using the proceeds of
the Hunter farm in paying for it. Smith and his fam-
ily lived in the Triplett street property until Feb-
ruary, 1914.

In the spring of 1913, Caleb Smith became a candi-
date for sheriff of Daviess county, and while making his
canvass he borrowed $1,000.00 from his son, E. F. Smith,
of Globe, Arizona.

On July 29, 1913, J. A. Carbon and Caleb Smith exe-
cuted their joint promissory note for $200.00 to the ap-
pellee, the Fourth Street Bank, of Owensboro. Caleb
Smith was not successful in his canvass for sheriff, and,
in December, 1913, he concluded to buy a farm, for
which he had been negotiating. His son, E. F. Smith,

of Arizona, was visiting Caleb Smith at the time, and offered to lend his father the money necessary to pay for the farm, E. F. Smith saying he had $4,000.00, or $5,000.00 lying idle in bank in Arizona, and that his father might have the use of it. When E. F. Smith returned to Arizona late in December, he sent his father $4,500.00 with which to buy the farm he had in view; but the owner of the farm having raised his price, Caleb Smith declined to buy it. He used $1,000.00 of the money, however, in buying a small place, in January, 1914, containing four acres, and known in the record as the Pleasant Ridge property, taking the title to his wife, Mary E. Smith. The deed to the Pleasant Ridge property was not, however, recorded until after this suit was instituted.

Caleb Smith returned $2,000.00 of the money to his son, E. F. Smith, in Arizona, leaving Caleb Smith owing his son, E. F. Smith, $3,500.00, according to their testimony.

On January 16, 1914, Caleb and Mary Smith executed a mortgage to their son, E. F. Smith, upon the Triplett street property, for $3,500.00, and put the mortgage to record. Shortly thereafter, in February, 1914, Caleb Smith and his wife removed from the Triplett street property to the Pleasant Ridge property, and have lived there ever since.

At the February 1914 term of the Daviess circuit court, the Fourth Street Bank took judgment against Caleb Smith upon the note above referred to, and an execution issued thereon was levied upon the Triplett street property.

In August of the same year, the Fourth Street Bank brought this action attacking the mortgage of January 16, 1914, to E. F. Smith for $3,500.00, as fraudulent, and made for the purpose of defrauding the bank and the other creditors of Caleb Smith; and, it becoming known upon the examination of Caleb Smith that he had bought the Pleasant Ridge property and had taken the title to his wife, an amended petition was filed likewise attacking the conveyance of the Pleasant Ridge property to Mrs. Smith as fraudulent, and made for the purpose of defrauding Caleb Smith's creditors.

By their answer to the amended petition, Caleb Smith and wife traversed the charges of fraud; set up the fact that Caleb Smith had never paid his wife the

$450.00 which was her part of the purchase price of the Hunter place which he had bought in 1895 and sold in 1909 for $2,250.00; that they had a homestead in the Triplett street property, and had transferred the homestead to the Pleasant Ridge property; and, that the Pleasant Ridge property had been bought for Mary E. Smith in payment of her patrimony of $450.00 which Caleb Smith had appropriated, as above stated.

By way of relief they prayed that the petition as amended be dismissed; that Mary E. Smith be adjudged to be the owner of the Pleasant Ridge property; and, if that could not be done, that it be adjudged to the defendants as a homestead.

E. F. Smith filed his answer traversing the charge of fraud, and asking that his mortgage be protected and enforced.

Proof having been taken upon these issues, the court sustained E. F. Smith's mortgage; ignored the claim of Mary Smith to the Pleasant Ridge property as well as the claim of Caleb and wife to a homestead in that property; gave Mary Smith, however, a lien for $450.00 without interest, upon the Pleasant Ridge property; and, gave the bank second liens on the Pleasant Ridge property and the Triplett street property.

The Triplett street property sold for less than E. F. Smith's mortgage debt; but the Pleasant Ridge property sold for $757.55, which was more than sufficient to pay Mary E. Smith's lien for $450.00 and the bank's debt of $200.00.

Mary E. Smith and Caleb Smith prayed an appeal from so much of the judgment as awarded the bank a lien upon the Pleasant Ridge property, or adjudged that property to be liable in any way, or to any extent, to the bank's claim; while the bank prayed an appeal from so much of the judgment as gave E. F. Smith a first lien upon the Triplett street property, and also from so much thereof as gave Mary E. Smith a first lien for $450.00 upon the Pleasant Ridge property.

This appeal, however, is prosecuted by Caleb Smith and wife; the bank has not prosecuted its appeal, and has not taken a cross-appeal.

Under this state of the record, we are not called upon to pass upon the correctness of the judgment in so far as it relates to the bank's claim under its levy upon the Triplett street property; we are confined to the

consideration of the claim of Mary E. Smith to the Pleasant Ridge property. As that property sold for more than enough to pay Mary E. Smith's claim for $450.00 and the bank's claim of $200.00, the bank will not be prejudiced if the judgment should be affirmed; and, if its debt be thus paid, the bank could not be heard to complain of any error in the judgment in so far as it related to the bank's claim upon the Triplett street property.

Caleb Smith paid $1,000.00 for the Pleasant Ridge property, and it is now not worth more than that sum.

Mary E. Smith's claim to the Pleasant Ridge property is based upon the fact that Caleb and his family had lived in the Triplett street property from 1909 to 1914; that he had a homestead in that property which antedated the creation of the bank's debt in July, 1913; and that he sold his homestead in the Triplett street property and transferred it to the Pleasant Ridge property, giving it to his wife, as he had the right to do.

It cannot be doubted that Smith had a homestead in the Triplett street property, while he and his family lived upon it, subject to the mortgage; and, the proof shows that appellants moved directly from the Triplett street property to the Pleasant Ridge property about the 1st of February, 1914, which was not more than a month after the execution of the mortgage upon the Triplett street property.

It has been repeatedly decided by this court that a debtor has the right to sell his homestead and invest the proceeds in another homestead, taking the title either to himself or to his wife, or to any person he pleases. This follows from the very nature of the estate. Being exempt from the claims of creditors, they cannot be prejudiced by any disposition the debtor may make of it. He can give it away; he can sell it and dispose of the proceeds in any way he may see fit; and, if he reinvests it in another home within a reasonable time, the right of homestead is transferred to the property thus purchased. Collins v. Collins, 30 Ky. L. R. 816, 99 S. W. 653; Green v. Pennington, 123 Ky. 837; Farmers & Traders Bank v. Childers, 150 Ky. 722.

And, the homestead will not be lost by a fraudulent disposition thereof, since fraud, to be actionable, must result in injury. But the homestead being forbidden fruit to the creditor which he may not pluck or eat, it

is as nothing to him. Dugan v. Massey, 6 Bush 81; Lockett v. James, 8 Bush 28; Kuevan v. Specker, 11 Bush 1; Snapp v. Snapp, 87 Ky. 554; Morton v. Young, 173 Ky. 304.

If Caleb Smith had a homestead in the Triplett street property (which we think he unquestionably did), he had the right to sell it and invest $1,000.00 of the proceeds in the Pleasant Ridge property—taking the title to his wife, as he did. It was so expressly decided in Collins v. Collins, *supra.*

Appellee insists, however, that the Triplett street homestead was not sold, but was mortgaged, and, for that reason, the case does not come within the rule that a debtor may sell his homestead and reinvest the purchase money in another homestead for himself, or give it to his wife, as was done in this case. We do not, however, see that there is any difference, in principle, between the two cases, since, in either case, the essential acts of the debtor, are the same. In either case he gets the money value of his homestead, reinvests it in another homestead for himself, and removes from the old to the new homestead or gives his new homestead to his wife. He does no more in the case of a sale than he does in the case of a mortgage of the original homestead. In either case he sells the original homestead and transfers it to a new homestead for himself, or buys a homestead for his wife. He had the right to do either, and so long as the gift to the wife does not exceed $1,000.00, the husband's creditors cannot complain.

This precise question arose in the case of Rose v. Smith, 167 Mo. 81. The Missouri Smith and his wife owned property worth $1,500.00, which was their homestead and exempt under the Missouri statute. They mortgaged it for its full value and used the proceeds in purchasing other property, consisting of a livery stable and a house and lot. Of the $1,500.00 purchase money, $1,375.00 were used in the purchase of the livery stable; and, with the balance of $125.00 and some other money realized from the sale of livestock and farming implements, they bought another house and lot. They then abandoned the old mortgaged homestead and moved to the new house, which the husband afterwards conveyed to his father. A creditor contended that as the debtor had simply mortgaged the old homestead, and had not sold it, the principle by which the proceeds of one home-

stead might be invested in another, did not apply; and also, that the mortgage created a lien, and that the owner could have a homestead in the equity of redemption, only.

In sustaining the debtor's right to a homestead in the new house and lot, the Supreme Court of Missouri said:

"The second contention of the plaintiff is true in the abstract, but has no application to this case. A mortgage creates a lien, and the mortgagor may have a homestead in the equity of redemption. But in this case the mortgagor abandoned his occupancy of the land mortgaged, and, therefore, lost his right to claim a homestead in the equity of redemption. Not only this, but he actually established a new homestead in the town house, and as he could not have two homesteads at the same time, this was an abandonment, in law, of the prior homestead.

"Again, while primarily a mortgage, or a deed of trust, creates only a lien, it may effectually transfer the title also, if the lien is not discharged by the payment of the debt. At common law, a mortgage was a pledge to be defeated upon the happening of a subsequent condition, and, if the condition was not fulfilled, the pledge became absolute, and the pledgee was entitled to possession, as he already had title by the terms of the mortgage. A deed of trust places the title in the trustee instead of in the beneficiary as a mortgage does. But the title in the trustee may be divested out of him by a sale under the deed of trust and the title in this way be transferred from the original debtor or grantor in the deed of trust to the creditor, as was done in this case, or some third person. So that a homestead may be sold as effectually by means of a mortgage or by a deed of trust, as by a direct conveyance. And the proceeds of a sale of a homestead by mortgage or deed of trust, that are invested in a new homestead, are just as much within the spirit and reason of the statute and just as fully protected by the statute, as if the old homestead had been sold outright and the proceeds reinvested in the new homestead, . . . .

"The town house being a homestead, the conveyance by Smith to his wife in 1894, and by Mrs. Smith to Ogle in 1898, carried a good title, no matter what motive actuated the transfer. (Bank v. Guthrie, 127 Mo. 189.)"

Rose v. Smith, *supra*, has been followed by the Supreme Court of Missouri in Bolz v. Nelson, 171 Mo. 690; Burroughs v. Howell County, 180 Mo. 647; and in Reed Bros. v. Nicholson, 189 Mo. 404.

We have been cited to no authority holding otherwise, and, to our minds, the argument of the Missouri case is unanswerable.

Our conclusion, therefore, is that Caleb Smith had a homestead in the Triplett street property, and when he abandoned it and used $1,000.00 of the proceeds of the mortgage in buying the pleasant Ridge property, and took the title to his wife, Mary, she took a good title thereto, and it was not subject to the payment of Caleb's debts.

We do not pass upon the appeal of the bank from so much of the judgment as denied the bank a lien upon the Triplett street property superior to that of E. F. Smith; we only pass upon the appeal of Caleb Smith and wife with respect to the Pleasant Ridge property.

The judgment is reversed with instructions to the circuit court to enter a judgment dismissing the petition against the appellant, Mary E. Smith, and the Pleasant Ridge property.