## Wells v. Dixon, et al.

(Decided May 14, 1926.)

### Appeal from Leslie Circuit Court.

1. Adverse Possession—Execution Defendant Held Owner of Land by Adverse Possession Under Claim of Right.—Execution defendant, put in possession of land under gift from his father, and residing thereon with his family for over 20 years, during all of which time his ownership was recognized by father's other heirs at law, established ownership thereof as against all others by adverse possession under claim of right.

2. Adverse Possession—Homestead—Execution Defendant's Ignorance of Execution, and Consequent Nonacceptance of Deed to Him from His Father's Other Heirs did Not Deprive Him of Right of Ownership by Adverse Possession Under Gift from Father, nor of His Homestead Therein.—That execution defendant was ignorant of execution of, and hence did not accept, deed to him from father's other heirs at law, did not deprive him of ownership acquired by adverse possession for over 15 years under gift from father, nor of his homestead therein.

3. Homestead—Sale of, and Removal from, Homestead, Worth Not Over $1,000.00, After Judgment Against Vendor, Held Not to Make Land Subject to Payment of Judgment.—Owner's sale of, and removal from, homestead, not worth over $1,000.00, held not to make it subject to payment of judgment rendered against him before sale, which in such case cannot be declared fraud on creditors, though resorted to for fraudulent purpose of defeating collection of judgment.

4. Fraudulent Conveyances.—Owner of homestead may sell and convey it, with or without consideration, regardless of creditors' claims.

5. Appeal and Error—Chancellor's Finding and Judgment that Value of Land, Sought to be Levied on Under Execution, did Not Exceed $1,000.00, will not be Disturbed, if Evidence Leaves Matter Doubtful.—Chancellor's findings and judgment that value of land, sought to be levied on under execution, did not exceed $1,000.00, so that there was no land in excess of homestead even if owner's sale and conveyance thereof was fraudulent, will not be disturbed, if evidence leaves matter in doubt.

L. D. LEWIS for appellant.

M. C. BEGLEY for appellees.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

The appellant, James Wells, recovered in the Leslie circuit court at its April term, 1899, a personal judgment against the appellee, James Dixon, Sr., for $942.00, with six per cent interest thereon from the date of its rendition until paid, and the further sum of $40.00, his costs expended in the action. In due course an execution was issued upon the judgment and placed in the hands of the sheriff of Leslie county, who shortly thereafter returned it officially endorsed, "No property found out of which to make this *fi fa,* or any part thereof."

No part of the judgment having in the meantime been paid, the appellant on February 27th, 1913, caused a second execution to be issued thereon, which on January 30, 1913, was levied by the sheriff on a tract of land in Leslie county lying on or near Cutshin creek, designated in the levy as the property of James Dixon, Sr., the defendant in the execution. Upon completing the levy the sheriff, by the customary method of procedure advertised the contemplated sale of the land to satisfy the execution; but as at the time of the levy of the execution the appellees, James Dixon, Jr., and Margaret Dixon, a son and daughter of James Dixon, Sr., were in possession

of the land and claiming to be the owners thereof and of the title thereto by purchase from their father and by virtue of a deed executed to them April 3, 1911, by the heirs at law of their grandfather, Wilson Dixon, deceased, the sale of the land under the execution advertised by the sheriff was not made or attempted; and on February 17, 1913, the date previously advertised by the sheriff for the sale of the land, the execution was returned by that officer to the clerk's office from which it issued, containing his official endorsement of the levy on same upon the land and setting forth the abandonment of its sale thereunder, together with the reasons therefor.

On February 19, 1913, the appellant, James Wells, instituted in the Leslie circuit court this action in equity, the petition in which, being based on a return of *nulla bona,* was in the nature of a bill of discovery seeking a means of enforcing the satisfaction of his judgment, and, especially, a sale of the land in question for that purpose. The appellees, James Dixon, Sr., James Dixon, Jr., Margaret Dixon and C. Lewis, were by the petition made defendants to the action; the latter because of his being the holder of a mortgage of record to the amount of $100.00 on the land. By an amended petition filed two years after the institution of this action, one Clem Jones, who by his marriage with the appellee, Margaret Dixon, had in the meantime acquired a residence on the land, was also made a defendant.

The petition, as amended, substantially alleged that the land therein described and sought to be subjected to the payment of the appellant's judgment, was at the time of its rendition, when the action in which it was obtained was brought, and also at the time the execution issued thereon was received and levied by the sheriff owned and the legal title thereto held, by the appellee, James Dixon, Sr. The petition likewise attacked the validity of the deed from the heirs at law of Wilson Dixon, deceased, to the appellees, James Dixon, Jr., and Margaret Dixon, and also that of the deeds subsequently executed by James Dixon, Sr., to the latter, each purporting to convey the land in question; it being alleged in the petition that each was without consideration and that the execution of the first was procured and the second made by James Dixon, Sr., with the fraudulent intent and purpose on his part and that of his grantees to cheat, hinder and delay the former's creditors; and particularly to prevent the land

from being subjected to the payment of the appellant's judgment.

The joint and several answer filed by the appellees to the petition consisted of two paragraphs, the first of which traversed all material affirmative averments of the petition, save such as set forth the appellant's recovery in the previous action of the judgment of $942.00 against the appellee, James Dixon, Sr., and the steps taken to enforce its collection, including the attempt to subject to sale under execution for that purpose the land in controversy.

In the second paragarph of the answer it was, in substance, alleged that the appellee, James Dixon, Sr., several years prior to the year 1894, became the owner of the land sought to be subjected to the payment of the appellant's judgment by parol gift from his father, Wilson Dixon, accompanied by the delivery to him of the possession thereof by the latter, who at the same time and in like manner gave and divided his remaining lands among his several other children. But that the intention of the father to execute to each of them, including the appellee, James Dixon, Sr., a deed conveying the portion of land given and allotted to him, or her, was prevented from being carried out by his death, which occurred shortly after the division and allotment of the lands. This intention, however, was, as alleged in the second paragraph of the answer, effectuated in 1894, and shortly after the death of Wilson Dixon, by the execution on the part of his heirs at law of the several deeds evidencing their joint and several acceptance of the partition made by him of his lands.

It was also substantially alleged in the same paragraph of the answer, that the appellee, James Dixon, Sr., at the time of receiving of his father the gift of the land allotted to him by the latter, was a *bona fide* housekeeper with a family, consisting of a wife and several small children; and that accompanied by them he at once removed to and took possession of the land by establishing a home thereon and with his family residing therein, and that he and his family there remained and continued to reside until the death of his wife, which occurred in 1911, soon after which he sold the land to his son and daughter, James Dixon, Jr., and Margaret Dixon, in consideration of their assumption and undertaking to pay a debt of $500.00, secured by a mortgage lien existing on the land.

Shortly thereafter, viz., April 3, 1911, he, in conjunction with the other heirs at law of Wilson Dixon, deceased, and the husbands and wives of such of them as were married, executed and delivered to James Dixon, Jr., and Margaret Dixon a deed conveying them the land in accordance with the terms of the contract of sale.

It was also alleged in the answer that in thus procuring the heirs at law of Wilson Dixon to join in the deed the appellee, James Dixon, Sr., acted in ignorance of the fact that they had in 1894, by deed, conveyed to him such interest as they may have owned in the land given and allotted to him by Wilson Dixon, deceased. Finally, it was alleged in the answer that the land in controversy did not, before or at the time of the creation of the debt, or claim, upon which the appellant obtained his judgment, or when it was levied on by his execution and does not now exceed $1,000.00 in value; and that the whole thereof was prior to and at the time of the creation of the demand for which the appellant obtained his judgment, when the judgment was rendered and execution levied thereon and, also, at the time of its sale by the appellee, James Dixon, Sr., to the appellees, James Dixon, Jr., and Margaret Dixon, exempt under the statute to the former as a homestead, and claimed and occupied by him as such.

The affirmative allegations of the answer were controverted by reply, and the completion of the issues followed by the taking of proof by the parties. Upon the summission of the case, the circuit court by its judgment dismissed the appellant's action and awarded the appellees their costs therein expended, and from that judgment the former has appealed.

It conclusively appears from the evidence that the appellee, James Dixon, Sr., was, by gift from his father and its allotment at the time, put in possession of this land; that he then with his wife and children began to reside upon it and with them continued to reside thereon for more than twenty years and until its sale by him to his son and daughter, during the whole of which time his ownership thereof was recognized by the other heirs at law of his father and his actual possession thereof adverse to all others. Manifestly, such claim of right to and adverse possession of the land established his ownership thereof as against all others. In addition to which it appears that he all the while held the title to the land

under and by virtue of the deed of conveyance thereto made him in 1894 by the other heirs at law of the father. It is true he testified that he was ignorant of the execution of this deed and did not learn of it until he found it of record about the time of the sale of the land by him to the son and daughter, but his alleged ignorance of the existence of the deed and consequent nonacceptance of the same before the sale of the land could not have been held to deprive him of the right of ownership acquired thereto by his residence upon and actual adverse possession of the land continuously for more than fifteen years, or of his homestead therein.

His alleged ignorance of the existence of the deed from the other heirs at law of his father is corroborated by his brother-in-law, H. H. Hensley, who testified that he, without consulting the latter, procured the execution of the deed because of his then being the holder of a mortgage upon the land executed by James Dixon, Sr., to secure the payment of the note he at that time held upon him, and that he (Hensley) also caused the deed to be recorded; after which he took possession of the original instrument and found it in a trunk at his home after the institution of this action. The testimony of both Dixon and Hensley as to this matter is wholly uncontradicted. This deed was relied on by the appellant to establish the title of James Dixon, Sr., to the land. It is claimed, however, by the appellant that the latter's sale of and removal from the land constituted an abandonment of his homestead and made the land subject to the payment of the judgment sued on.

This contention cannot be sustained for, if at the time of the sale of the land by James Dixon, Sr., to his son and daughter he was entitled to a homestead therein and the land did not exceed in value $1,000.00, his sale and the conveyance thereof cannot be declared a fraud upon his creditors; and this would be true though such sale and conveyance of the land were resorted to for the fraudulent purpose of defeating the collection of the appellant's judgment. In other words, the owner of a homestead in land may sell and convey it with or without consideration and regardless of the claims of his creditors, because of it being exempt by law from their demands. Tong v. Eifort, 80 Ky. 152; Roark v. Bach, 116 Ky. 460; Cryer v. Conway, 181 Ky. 526; Turner v. Browning's Admr., 128 Ky. 79; Mount v. Fourth Street Bank, 156 Ky. 503.

The only conflict in the evidence was as to the value of the land. But considered as a whole, we think its weight is to the effect that its value is less than $1,000.00. But if, after considering the evidence, we were left in doubt as to the matter, we would feel it our duty to be controlled by the findings and judgment of the chancellor that its value was less than, or did not exceed, that amount; hence there was no land in excess of the homestead that could have been subjected to the appellant's judgment had there been any ground for holding the owner's sale and conveyance of it fraudulent as to such excess. There being no cause shown by the record for disturbing the judgment, it is hereby affirmed.