## Paintsville National Bank v. Conley et ux.

(Decided Jan. 22, 1935.)

WHEELER & WHEELER for appellant.

W. R. PRATER for appellees.

OPINION OF THE COURT BY JUDGE REES—Affirming..

The appellee T. J. Conley and H. B. Adams were sureties on a note for $400, dated October 10, 1928, executed and delivered to the Paintsville National Bank by John Cheek. The note was renewed from time to time, and, when the last renewal, dated May 27, 1931, fell due, the maker of the note and the sureties failed to pay it, and the bank instituted a suit against them in the Johnson circuit court. On June 15, 1932, a default judgment was rendered against each of the de-

fendants for $400, with interest from September 24, 1931.

At the time the original note was executed, T. J. Conley owned three adjoining tracts of land in Magoffin county. On January 5, 1930, he conveyed this land to his wife, the appellee Flora Conley, but the deed was not lodged for record until June 28, 1932. On August 2, 1932, an execution directed to the sheriff of Magoffin county issued against T. J. Conley on the default judgment that had been rendered in the Johnson circuit court. The execution was returned by the sheriff "No Property Found."

The Paintsville National Bank then instituted this action in the Magoffin circuit court against T. J. Conley and his wife, Flora Conley, in which it sought to set aside the conveyance from T. J. Conley to his wife on the ground that it was made while he was indebted to the plaintiff and with fraudulent intent to cheat, hinder, and delay his creditors, including the plaintiff, and to defeat the collection of their demands against him, and it further sought a sale of a sufficient amount of the land to satisfy the judgment that had been obtained in the Johnson circuit court. The defendants answered traversing the allegations of fraud in the petition and affirmatively pleading that the land was exempt as a homestead. From a judgment denying the relief sought and dismissing its petition, the bank has appealed.

A reversal of the judgment is sought on two grounds: (1) Because the circuit court failed to appoint commissioners to appraise the real estate and allot the homestead; and (2) because the judgment is not supported by the evidence.

T. J. Conley testified that the three tracts of land consisting of about 50 acres were worth not exceeding $1,000 when he executed the deed to his wife on January 5, 1930. William Adams, who at one time owned an interest in the land, testified that it was worth about $1,000. John Conley, who lived less than a mile from the home of appellees, fixed its market value at eight hundred or nine hundred dollars. The only witness introduced by appellant who testified as to the value of the land was H. B. Adams, cosurety with T. J. Conley on the Cheek note. He fixed the value of the

land at eighteen hundred or two thousand dollars. The circuit court accepted the values fixed by the appellee and his witnesses and in effect held that it was exempt as a homestead and refused to set aside the deed from T. J. Conley to his wife.

If it had been shown that the land was worth more than $1,000, the value of a homestead exempt from execution, it would have been the duty of the court under the facts to set aside the deed of January 5, 1930, appoint commissioners to lay off the homestead, and subject the remainder to the payment of appellee's debt. The appellant insists that the circuit court erred in failing to appoint commissioners to allot the homestead. This would have been the proper procedure had the court determined that the land exceeded $1,000 in value and that the conveyance by Conley to his wife was fraudulent. Mount v. Fourth Street Bank, 156 Ky. 503, 161 S. W. 220, is relied upon, but in that case the land had a value in excess of $1,000 and commissioners were properly appointed to set apart a homestead. As pointed out in the opinion, however, the action of commissioners is not conclusive, and the court may, after exceptions are filed to the report and evidence is heard on the exceptions, exercise his own judgment in fixing the amount of land that should be allotted. In that case the commissioners set apart 18 acres as a homestead, and, after hearing evidence on exceptions to the report, the court concluded that the number of acres allotted by the commissioners was not sufficient and adjudged that there should be set apart 27 acres. The judgment was affirmed.

Here it was necessary for the court to determine both that the conveyance was fraudulent and that the value of the land conveyed exceeded $1,000 before he could adjudge the deed void, and, until the deed was set aside and the land in excess of the homestead adjudged subject to appellee's debt, there was no point in selecting commissioners to allot the homestead. If the appellee Conley was entitled to the land as a homestead when he executed the deed to his wife, his conveyance was not fraudulent as to his creditors, though he may have intended to defeat the collection of their claims by his act. Their rights were not affected, since the conveyance did not operate to their prejudice. Helton v. Vanderpool, 251 Ky. 312, 64·S. W. (2d) 883;

Kennoy v. Cannon, 238 Ky. 700, 38 S. W. (2d) 672; Patrick v. Daniel, 238 Ky. 172, 37 S. W. (2d) 71; Reynolds v. Sizemore, 233 Ky. 122, 25 S. W. (2d) 48; Farmers' & Merchants' Bank of Elkton v. Bagby, 223 Ky. 29, 2 S. W. (2d) 1033; Wells v. Dixon, 214 Ky. 499, 283 S. W. 434, 436; Smith v. Fourth Street Bank, 174 Ky. 647, 192 S. W. 643; Mount v. Fourth Street Bank, 156 Ky. 503, 161 S. W. 220; Kentucky Statutes, sec. 1702. In Wells v. Dixon, supra, it was said:

> "It is claimed, however, by the appellant that the latter's sale of and removal from the land constituted an abandonment of his homestead, and made the land subject to the payment of the judgment sued on. This contention cannot be sustained, for, if at the time of the sale of the land by James Dixon, Sr., to his son and daughter he was entitled to a homestead therein, and the land did not exceed in value $1,000, his sale and the conveyance thereof cannot be declared a fraud upon his creditors, and this would be true, though such sale and conveyance of the land were resorted to for the fraudulent purpose of defeating the collection of the appellant's judgment. In other words, the owner of a homestead in land may sell and convey it with or without consideration, and regardless of the claims of his creditors, because of its being exempt by law from their demands."

The only conflict in the evidence was as to the value of the land. Appellee T. J. Conley and two witnesses introduced by him testified that the value of the land at the time it was conveyed to his wife did not exceed $1,000, and one witness introduced by appellant fixed its value at more than $1,000. Appellant argues that appellee's witnesses failed to show themselves sufficiently acquainted with real estate values in the locality in which the land was located to qualify them to testify on that point. Both stated that they were acquainted with this tract of land and with its market value. One of them at one time owned an interest in the land, and the other lived in that vicinity. It was shown that no sales of real estate had been made in that section of the county at or about the time of the conveyance from Conley to his wife, but, if this fact alone constituted a disqualification, then no one could qualify as a competent witness as to value. On this

point the Supreme Court in Montana Railway Company v. Warren, 137 U. S. 348, 11 S. Ct. 96, 97, 34 L. Ed. 681, said:

"The witnesses whose testimony is complained of all testified that they knew the land and its surroundings, and many of them that they had dealt in mining claims situated in the district, and had opinions as to the value of the property. It is true some of them did not claim to be familiar with sales of other property in the immediate vicinity, and the want of that means of knowledge is the specific objection made in the supreme court of the territory to the competency of those witnesses. But the possession of that means of knowledge is not essential. It has often been held that farmers living in the vicinity of a farm whose value is in question, may testify as to its value, although no sales have been made to their knowledge of that or similar property. Indeed, if the rule were as stringent as contended, no value could be established in a community until there had been sales of the property in question, or similar property. After a witness has testified that he knows the property and its value, he may be called upon to state such value. The means and extent of his information, and therefore the worth of his opinion, may be developed at length on cross-examination. And it is fully open to the adverse party, if not satisfied with the values thus given, to call witnesses in the extent of whose knowledge and the weight of whose opinions it has confidence."

We think the witnesses showed they were competent to testify as to the value of the land and that the evidence on this point is sufficient to sustain the judgment of the chancellor.

The judgment is affirmed.