## Daniels v. Coleman et al.

## Meador v. Same

Nov. 4, 1942.

Farland Robbins and Wade Crawford for appellants.

A. H. Kopperud for appellees.

OPINION OF THE COURT BY JUDGE CAMMACK—Reversing in part and Affirming in part.

The principal question involved in these two cases concerns an attack upon two deeds executed by J. H. Coleman in March, 1940. The Daniels case involves also an effort on Daniels' part to collect from Coleman a $465 legacy which Coleman had converted to his own use while acting as executor of the estate of Daniels' father in 1916. The chancellor upheld the conveyances and allowed Daniels the sum of $938, being $575 and interest thereon from October 20, 1930. Both phases of the judgment are under attack in this appeal. We will dispose of the last question first.

Coleman became the executor of the estate of Daniels' father in 1916. He made no settlement of the estate and it is admitted that he converted $465 due Daniels to his own use. Daniels instituted suit to collect the amount due him by Coleman in 1930. The outcome of that proceeding was that Daniels agreed to accept $575 in satisfaction of his claim, provided the amount was paid by the 20th day of October, 1930. The writing also set forth that Daniels released Coleman from all debts owing to him by reason of the administration of his father's estate, and that Coleman agreed to take care of all court costs and taxes owing by the estate. The agreement further sets forth that it "is a full and complete settlement of said transaction." Coleman did not pay the amount agreed upon by the date set, nor had he paid any of it at the time of the filing of this action by Daniels in July, 1940. Presumably, Coleman carried out the other phases of the agreement, because this record shows nothing to the contrary.

Daniels now insists that, since the compromise amount was not paid on the date agreed upon, he is entitled to compound interest on his legacy from 1917. There is considerable discussion of the applicable period of limitation on a question such as this, but we deem it

unnecessary to enter upon a discussion of that question, since we gather the impression from Daniels' actions and conduct after 1930 that he chose to rely upon the agreement entered into at that time. We take this view primarily because he took no step after Coleman had failed to pay the compromise amount on the date agreed upon to enforce the 1930 agreement or to collect the $465 with interest from 1917 until he brought this action. Furthermore, we have noted subsequent provisions in the 1930 agreement which make it appear that the parties agreed upon a full and complete settlement of their differences upon the basis of the payment of $575 and Coleman's caring for all court costs and taxes owing by the Daniels estate. It is our conclusion, therefore, that the provision of the judgment awarding Daniels $938 is correct.

We find ourselves unable to agree with the conclusions of the chancellor as to the deeds in question. It is agreed that the Coleman property in Murray is worth $4,000. Coleman recorded a deed to the property on the 18th of March, 1940, executed jointly to his first wife and himself in 1901. Coleman's first wife died sometime prior to 1915, and his interest in the property at that time was one-half, the other half belonging to his two children by his first wife. On the 8th of March, 1940, Coleman conveyed a one-fourth undivided interest in the property to his daughter by his second wife. This deed recited that it was made in consideration of $1, other valuable consideration, and love and affection. After this conveyance there remained in Coleman a one-fourth undivided interest in the property. At the time of the execution of this deed Meador was pressing Coleman on an indebtedness of several hundred dollars, suit to collect which was filed on the 22nd day of March, and prosecuted to a successful conclusion. Incidentally, Meador comes into this picture by virtue of his attempt to collect that judgment.

On the 18th of March, Coleman conveyed his remaining one-fourth undivided interest in the property to his wife. It is admitted that this conveyance left him insolvent. The consideration in that deed is:

"Now, therefore, in consideration of the sum of eleven hundred ($1100.00) dollars, said sum being the amount of an indebtedness owing party of the second part by party of the first part, which indebtedness party of the second part has hereby agreed to

cancel in consideration for this deed, the party of the first part has granted, bargained, sold, and by this deed conveys to the party of the second part, a one-fourth undivided interest in all of the following described property * * *.''

The testimony of the Colemans as to these deeds is that Coleman conveyed his homestead interest in the property under the deed of March 8th to his daughter, and that the deed to his wife culminated the sale of a one-fourth interest in the property to her in 1915 for an amount slightly in excess of $1,100. There was testimony that Mrs. Coleman turned over that amount of money to her husband in 1915 and that he agreed to convey to her a one-fourth interest in the property therefor. There was no writing or other instrument setting forth this alleged transaction. The chancellor found that Coleman sold his wife a one-fourth interest in the property for $1,100 on December 1, 1915, and that the deed of March 18th, was ''not fraudulent, voluntary or preferential, but was executed in consummation of the sale aforesaid.'' It was further adjudged that the conveyance of the one-fourth undivided interest to Coleman's daughter, without consideration other than love and affection, was ''not fraudulent or void as to creditors, being not in excess in value of the homestead right in said property belonging to J. H. Coleman.'' It can be seen that it was the chancellor's theory that before the conveyance to Coleman's daughter on March 8th, there remained in him only a one-fourth undivided interest in the property. We are not in accord with that view. We think the conveyances of March 8th and March 18th were made for the purpose of defeating Coleman's creditors. We are not impressed with the testimony as to the alleged sale of a one-fourth interest in the property to Mrs. Coleman in 1915. The deed itself leaves this contention groundless, for it shows that it was made in satisfaction of a debt due from Coleman to his wife. There is nothing said therein about the consummation of a transaction entered into 25 years previously. With that deed out of the picture it can be seen that, when the conveyance of March 8th was made, there still remained in Coleman a one-fourth undivided interest in the property. Furthermore, that deed does not recite that Coleman was attempting to convey to his daughter his homestead interest.

That Coleman is entitled to a homestead interest in

the property under KRS 427.060 (KS 1702) is beyond dispute. Furthermore, we have frequently held that a homestead may be conveyed, though it is done with the intent to cheat and defraud creditors. Paintsville Nat. Bank v. Conley, 257 Ky. 425, 78 S. W. (2d) 313. But it can be seen from what has been said heretofore that we are not dealing with a situation where an effort has been made to convey only a homestead interest. Coleman attempted to dispose of all of his property, and the circumstances surrounding the deeds themselves, as well as the recitations therein, overcome the explanations of the Colemans as to their execution.

It follows, therefore, that we are of the view that that part of the judgment upholding the conveyances must be and it is reversed, with directions that it be set aside for proceedings consistent with this opinion. The part of the judgment awarding Daniels $938 is affirmed.