## Castle v. Allen et al.

### May 25, 1943.

Combs & Combs for appellant.

Edward L. Allen for appellees.

OPINION OF THE COURT BY JUDGE CAMMACK—Affirming.

Morgan Castle, brother of the appellant, Ark Casle, shot and killed Guyless Allen on March 27, 1936. Morgan was found guilty and sentenced to the penitentiary for 21 years. It appears from the briefs he is now in the asylum. On April 30th following the killing, the appellees herein, the widow and children of Guyless Allen, filed an action against Morgan and Ark Castle, wherein they sought damages against Morgan, and to have set aside two deeds under which Morgan had conveyed all of his property to Ark on April 2nd. A judgment in the sum of $5,000 was recovered against Morgan. That judgment was affirmed in the case of Castle v. Allen, 274 Ky. 658, 120 S. W. (2d) 219. Thereafter the case was transferred to the equity docket and tried on the issue of the alleged fraudulent conveyances. This appeal is from a judgment in favor of the appellees, wherein the two deeds were cancelled and set aside, and the commissioner was directed to sell the lands and apply the proceeds of the sale, or a sufficient part thereof, to the payment of the appellees' debt, interest and costs.

In urging reversal Ark insists that (1) the deeds were without fraudulent intent by Morgan or himself, and were for a fair and full consideration paid to enable Morgan to defend himself in his murder trial; (2) the deed for one tract which recited a consideration of $500 cash in hand paid was in reality in satisfaction of a $450 note and interest which Morgan had given Ark for borrowed money in April, 1934; (3) Ark was entitled to a homestead; and (4) he was entitled to the rents and profits from the lands up until the time they were conveyed to the appellees by the commissioner.

Morgan was unmarried and lived on the tract of land which was conveyed in the deed reciting the consideration of $500. Ark and his family lived on land belonging to his mother-in-law in Magoffin County. Shortly after Morgan shot Allen he went to Ark's home and there is some indication that the brothers then discussed the land deal. On the next day Morgan went to Prestonsburg and surrendered himself, and was placed in jail. Ark was in Prestonsburg on that day, and went to the Bank of Josephine and secured money on a check given him by Morgan. Ark was in Prestonsburg on March 31st, and he says at that time Morgan offered to sell him all of his lands in order to raise money to defend himself in the pending murder trial. On the same day Morgan, Ark and a deputy jailer went to the Bank of Josephine where Morgan withdrew all of his funds, which totaled $659.80. This money was turned over to Ark, who placed it in the bank in a new account in the name of one of his infant sons. Ark says he withdrew this money from the account shortly afterward and gave it to Morgan in cash. On April 2nd, Ark returned to Prestonsburg and took a deputy clerk with him to the jail, where Morgan acknowledged the two deeds. The one to the home place, which recited a consideration of $500, was supposed to have been in satisfaction of Morgan's alleged indebtedness to Ark; the other deed recited a consideration of $1,500. Ark says he offered to pay all of the money to Morgan, but the latter said he did not need but $700 of it and he then gave him $700 in cash and a note for the remaining $800. Ark said he later paid Morgan $700 in cash on the note and gave him a check for $100, which was taken up through a cash payment. Ark was able to produce witnesses to all of the aforementioned transactions, including the execution of the $450 note by Morgan in 1934. There was proof, however, showing the

note was written on the same type of paper and with the same character of ink as was the $800 note which Ark gave Morgan in the land deal. Of course Ark advanced testimony to show the land transactions were made in the utmost good faith, and for the sole purpose of permitting Morgan to raise money to defend himself in the criminal action.

A brief statement of the evidence concerning Ark's history will throw some light on his activities. According to his testimony, and that of others, he had carried on an extensive moonshining business for several years, from which he says he made lots of money. He killed a man in 1928. Shortly after the killing he conveyed all of his property to his wife under deeds prepared by his father-in-law. While there is testimony showing Ark kept large sums of cash at his home and on his person, and had bank accounts in the names of his wife and some of his children, there is also testimony showing he spent considerable money in defending himself on his murder trial. There is proof also showing that during those so-called prosperous years Ark had borrowed $50 from the Bank of Josephine with three indorsers on his note, which persons lived some distance from his home. This note was carried for several years, then paid down to $25 and then carried for several years. At each renewal period Ark, or some member of his family, would take the long trips to the homes of the indorsers to secure their signatures on the renewals. Furthermore, all of Ark's bank accounts were closed about 1928.

We concur in the view expressed by the chancellor, namely, that Ark used Morgan's own money to pay for the lands. There was evidence tending to show Morgan was not indebted to Ark in any sum, and it is singular that most of the money transactions approximated $700. Morgan withdrew approximately that amount from the Bank of Josephine when he closed his account on March 31st. Ark then paid Morgan only $700 in cash on the larger tract of land, and later paid him $700 in cash on the $800 note. As said by the chancellor,

"The whole transaction, from beginning to end, smacks of fraud, and no other conclusion can be reached but that not only Morgan paid for the execution of these deeds, but in any event, the deeds were executed by Morgan to Ark for the express purpose of avoiding any liability on the part of

Morgan as the result of a threatened suit for damages by the plaintiffs.''

This applies to both of the conveyances and leaves without merit Ark's contention that at most the conveyance of the smaller tract of land for the recited consideration of $500 was a preferential one which could be attacked only under KRS 378.060.

The circumstances revealed in the case of Lewis v. Barber, 243 Ky. 519, 49 S. W. (2d) 328, are somewhat similar to those in the case at bar, although the deeds under attack in that case were made after the action for damages had been filed. It is apparent from what has been said heretofore, however, that we think the record shows conclusively Morgan and Ark were attempting to put Morgan's property beyond the reach of the widow and children of Guyless Allen.

Ark set up his claim to a homestead by way of an amended answer. His claim was based upon the contention that he had been residing upon the farm prior to the filing of the petition, notwithstanding the fact he did not move upon the land until about a year after the filing of this action and after the attachments had been issued and levied on the land on which he moved. It is further contended, however, that Morgan was entitled to claim a homestead and that it was conveyed by him to Ark. As pointed out in Daniels v. Coleman, 291 Ky. 789, 165 S. W. (2d) 804, a homestead may be conveyed, though it is done with the intent to cheat and defraud creditors. This brings us to the question of whether Morgan was entitled to claim a homestead. He was unmarried. Ark testified, however, that Morgan had five bastard children by a woman who lived with him part of the time, and that he helped her support the children. He said the woman stayed at Morgan's place part of the time and sometimes ''he would go and stay with her at her father's home.'' It does not appear that any bastardy proceedings had been instituted against Morgan, nor is there other proof as to these children and their maintenance to support that given by Ark. Under the circumstances we do not think the evidence warrants the contention that Morgan would have been entitled to claim a homestead. Ark relies primarily upon the case of Bell v. Keach, 80 Ky. 42, 3 Ky. Law Rep. 520, 653. That case held that a man who had a housekeeper residing with him for some 20 years, and who had a son by

her, was entitled to claim a homestead against his creditors, but there the woman was treated by the man as his wife, and the son as his by her, and each was dependent upon him for support. We do not believe Ark's testimony concerning Morgan's right to a homestead brings the case within the purview of the Bell case. It does not show that Morgan was a bona fide housekeeper, and therefore entitled to set up a claim to a homestead under the statutes (KRS 427.060).

Certain small oil and gas royalties coming from some of the lands owned by Morgan were attached as were the lands at the institution of this proceeding. The judgment directed that they be turned over to the commissioner, who was ordered to hold them until further orders of the court. The record does not show what disposition was finally made of these royalties. Ark is contending, however, that he was entitled to all rents and royalties up until the time the commissioner conveyed the lands to the appellants, who bid them in at the sale at the appraised value of $2,700. If the part of the judgment referring to the rents and royalties be interpreted as meaning that Ark was not entitled to them, and that they should be held by the commissioner to be applied upon the $5,000 judgment in favor of the appellees, in the event the lands failed to bring a sufficient amount to satisfy the judgment, interest and costs, our conclusion is that it was correct. We have noted that the deeds were canceled and held for naught. The judgment set out that Ark Castle had obtained no title to, or interest in, the lands embraced in either of the deeds. The evidence shows he was as guilty as Morgan in perpetrating the fraud. He should not, and will not, be permitted to reap profit from his own fraudulent acts. Ark relies primarily upon the case of Tate v. Sanders, 245 Mo. 186, 149 S. W. 485, 491; Ann. Cas. 1914A, 998, wherein it is said:

"But in the case of the ordinary plain fraudulent conveyance, where the grantee takes the property without any such 'secret trust' and claims it not only against the creditor but against the debtor, such grantee is liable for rents only from such time as the debtor himself would have been liable had the property remained in his hands. Such is the result of the fact that the conveyance is simply void. The

422

parties are left just where they would have been had no such conveyance been made   *   *   *,,

It does not appear that attachments were issued against the property and the rents in that case. We have noted that the appellees attached both the lands and the royalties at the institution of this proceeding. Under the circumstances, and for the reasons hereinbefore stated, we think that both the lands and the royalties should be subjected to the satisfaction of the appellees' judgment.

Judgment affirmed.