Baker, &c., v. Kinnaird.

---

CASE 2—PETITIONS EQUITY—February 2.

# Baker, &c., v. Kinnaird.

APPEAL FROM ADAIR CIRCUIT COURT.

<table>
<tr><td>94</td><td>5</td></tr>
<tr><td colspan="2">e111 356</td></tr>
<tr><td>94</td><td>5</td></tr>
<tr><td>121</td><td>749</td></tr>
</table>

1. CONSOLIDATED ACTIONS—DEFENDANTS NOT SERVED WITH PROCESS REGARDED AS BEFORE THE COURT.—Where an insolvent debtor, subsequent to the execution by him of various mortgages to antecedent creditors with the design to prefer, executed a deed of assignment for the benefit of all his creditors, and in separate actions by the preferred creditors to enforce their mortgage liens, the assignee, by answer, attacked the mortgages as preferences under the statute, these actions by the preferred creditors having been consolidated with an action by unsecured creditors attacking the mortgages as preferences under the statute, the preferred creditors, who were non-residents, must be regarded as before the court in the suit of the unsecured creditors, although there was neither actual nor constructive service of process upon them in that case.

2. UNLAWFUL PREFERENCE OF CREDITORS—DUTY OF ASSIGNEE FOR CREDITORS.—Whether or not the assignee could have maintained an independent action to have the mortgages declared to operate as an assignment it was his duty, under the circumstances, to have the question determined as to the validity of these transfers.

Baker, &c., v. Kinnaird.

3. Same—Action by one Creditor Inures to Benefit of all.—A petition filed by one creditor seeking to have an act of the debtor declared to operate as an assignment under the statute, inures to the benefit of all, and any creditor has the right to proceed under it. Therefore, although the petition in this case was dismissed by the creditors who filed it, yet creditors who had been made plaintiffs with them by an amended petition, had the right to prosecute the action, and it is not material whether process on the amended petition was served on the defendants.

4. Same.—Where the indebtedness of a merchant amounted to three times as much as his assets, and his creditors were making a race of vigilance in obtaining securities for their respective claims, one mortgage after another being executed by the debtor, the design to prefer is manifest, and the several transfers must be declared to operate as an assignment under the statute.

5. Same.—A mortgage executed by the debtor to indemnify one who became his surety in the renewal of a note in bank which was overdue, it being recited in the mortgage that it was to inure to the benefit of the bank, must be regarded as a device to prefer the bank, the note being subsequently renewed by the surety in his own name, and the mortgage assigned by him to the bank without any recollection upon his part that he had done so.

6. Money that has been paid to preferred creditors on their collaterals must be refunded by them or credited on their claims if the amount does not exceed the sum to which the creditor collecting it is entitled in the distribution of the debtor's estate. They can not be regarded as bona fide purchasers.

7. A preferred creditor to whom the debtor's homestead has been transferred with other property may retain the homestead, the debtor having the right to dispose of that as he pleased.

H. C. BAKER for appellant James Baker.

As to $1,400 of the new note with the accrued interest which went into it, the liability of James Baker was created simultaneously with the execution of the mortgage and upon the faith of it; and as to the other $600 for which he was bound with others, it, by reason of the change of parties and the execution of a new paper, is also a new liability then and there created, and therefore no part of his claim is within the act of 1856. (Gen. Stat., chap. 44, art. 2, secs. 1, 4; Davis v. Gardner, 1 Bush, 272; O'Neil v. Miller, 2 Bush, 294; Whittaker, &c., v. Garnett, &c., 3 Bush, 411; Terrell, &c., v. Jennings, &c., 1 Met., 459; Thompson, &c., v. Heffner's ex'ors, 11 Bush, 355; McCutcheon & Co. v. Caldwell & Son, 90 Ky., 249.)

JAMES GARNETT for appellants.

1. The suits should not have been consolidated. The parties were not

Baker, &c., v. Kinnaird.

before the court, and the order of consolidation could not bring them before the court.

2. The assignee for creditors could not bring any suit that the debtor could not have brought, or recover any property that the debtor himself could not have recovered; and as the debtor could not have maintained a suit to vacate the mortgage made to these appellants or to recover the money paid to them, the assignee could not maintain such a suit.

3. Both the assignee and James A. Hamilton, having accepted the assignment and asked that it be upheld and carried out, are estopped from assailing it and repudiating it. (Handley v. Foley, 18 B. M., 521; Cornwall's Heirs v. Mason's Heirs, 2 Bush, 441.)

4. To bring a case within the act of 1856 the act complained of must be done not only in contemplation of insolvency but with a design to prefer. (Hampton v. Morris, 2 Met., 336; Grimes' Assee. v. Grimes, 86 Ky., 511; McAfee v. Bland, 11 Ky. Law Rep., 2.)

5. While the presumption is that mortgages and payments made by an insolvent debtor to his creditor were made in contemplation of insolvency and with the design to prefer, this presumption is not conclusive but may be rebutted by the circumstances of the transaction. (Grimes' Assee. v. Grimes, 86 Ky., 411; Talbott's Assee. v. Ewalt, 9 Ky. Law Rep., 908 )

6. The allegations are not sufficient to authorize the judgment requiring appellants to pay to the receiver the amount collected by their attorney on the orders given to him on Shannon. In order to bring these payments within the statute, the same allegations are necessary as are required to bring the mortgages within the statute. The fact that these payments were made after the mortgages were executed does not render the payments void. And in no event could these appellants be required to refund any of said orders for $500 each, except such part thereof as exceeded the amount of the pro rata that they would be entitled to on their debts and the costs they had incurred in collecting.

MONTGOMERY & JONES ON SAME SIDE.

1 As J. & H. Mann & Co. were not made parties to the suit of the assignee, or to the suit of Gra man & Shuttleworth, or to the amended petition, and there is not a single allegation made against them in the entire record, the judgment declaring that the transfers to them were acts of insolvency was erroneous. To entitle any creditor to recover against them he should make them parties and make the allegations against them sufficiently specific to authorize a recovery against them just as if they were the only parties to the suit. (Fuqua v. Ferrell, 80 Ky., 70; Southworth v. Casey, 78 Ky., 395.)

2. The act of 1856 requires that a party attacking a conveyance or trans-

fer under the act must file his petition within six months *and* cause a summons to issue or a warning order to be made (10 Bush, 98; Civil Code, sec. 39). And if the non-residents in these cases did enter their appearance by the order of consolidation it had been more than s x months after the acts complained of and could not avail appellees, Kinnaird, &c., any thing.

3. The allegations as to each act complained of must be made as specifically as if the suit had been orginally brought on that act. The making of a sale or payment is not *ipso facto* void, but is voidable only at the election of creditors made by petition filed within six months. (Fuqua v. Terrell, 80 Ky., 70; 3 Met., 539; 11 Bush, 210.)

In this case there is no statement made in the pleadings in regard to the $500 paid Bamberger, Bloom & Co., and the court erred in adjudging them to pay back that amount; and in adjudging that Rindskopf, Stein, Lauer & Co. should return the $250 paid them, even if they were before the court.

4. The design to prefer will be inferred from a payment by an insolvent debtor, but the circumstances accompanying it may show plainly that there was no motive or thought of giving an advantage or preference, and then the presumption is repelled. (Grimes' Assee. v. Grimes, 86 Ky., 511.)

J. E. McMURTRY of counsel on same side.

LEWIS McQUOWN for appellees.

1. Where an assignee for creditors has knowledge that certain creditors. have been favored and provided for by his assignor to the detriment of the mass of general creditors, it is not only his *right* but his *duty* to have the transfers declared within the act of 1856, and thus secure equality. As he represents and stands for the creditors no estoppel applies. (Burrill on Assignments, § 392.)

The statute does not confer an exclusive benefit on the plaintiff. He only starts the proceeding, and then it is "subject to the control of a court of equity" for the purpose of equally distributing the estate. (Gen. Stat., chap. 44, art. 1, sec. 2; Sawyers v. Langford, 5 Bush, 539.)

2. All the necessary allegations and proof having been made against the creditors who were ordered to refund, there can be no question as to the power of the court to so adjudge. (Fuqua v. Ferrell, 80 Ky., 69.)

3. Where a debtor knowing that he is insolvent, in order to give a particular creditor a preference, executes a mortgage to secure a debt or liability already created, together with a liability simultaneously created, and the creditor, knowing the true state of case, aids the arrangement, he is not a mortgagee in good faith to secure a liability

simultaneously created, and obtains no preference over other cred-
itors. (McCann v. Hill, 85 Ky., 574.)

4. The bank as the assignee of James Baker and Baker himself can not
avail themselves of any homestead claim that Hamilton may have
had in the mortgaged property. Hamilton does not claim the ex-
emption and Baker an l the bank can not claim it for him.

R. B. DOHONEY ON SAME SIDE.

1. The facts in proof show conclusively that Hamilton, at the time he
assigned the collateral notes to W. H. Newman & Co. and Jno. M.
Robinson & Co., Oct. 2, 1888, knew he was insolvent, and knowing
that fact must, under the law, have designed to prefer said creditors.
(Temple, Barker & Co. v. Poyntz, 2 Duv., 276; Applegate v. Mur-
rell, 4 Met, 28; Thompson v. Heffner's Ex'r, 11 Bush, 359.)

2. All of Hamilton's property of every kind passed by operation of law
to the use and benefit of all his creditors on the 2d day of October,
1888, six days before the bank mortgage was executed. Hence that
mortgage, so far as it attempted to convey title to or create a lien
on Hamilton's property, was absolutely void. (McCann v. Hill, 85
Ky., 579.)

3. James Baker and William Hamilton, under the bank mortgage, held
the legal title of the homestead in trust for the general creditors.
(Cantrill v Risk, 7 Bush, 159; Gideon, Burton & Co. v. Struve and
Wife, 78 Ky., 134.)

4. The assignee had the right to prosecute the suit brought by him. He
is an "interested" party within the meaning of the statute. (McKee
v. Scobee, 80 Ky., 127.)

JUDGE PRYOR DELIVERED THE OPINION OF THE COURT.

This appeal is brought here from a judgment of the
Adair Circuit Court, adjudging that certain transfers
of property, real and personal, by W. M. Hamilton,
were within the act of 1856, and operated to pass the
estate to his creditors.

That Hamilton, at the date of the first transfer of
certain notes and accounts to John M. Robinson and
others as collaterals, to secure his indebtedness to
them, was much involved in debt, more than three
times the value of his assets, as appears from the
testimony, and that his creditors were making a race

of vigilance in obtaining securities for their respective claims, the written conveyances of his land and assignments of his personalty, found in this record, clearly evidenced.

If there is such a thing as bringing a case within the equity of this statute, and to carry into effect its purpose, this is the case, and there are too many reported cases sustaining the validity of this statute and its equitable provisions to now bring the matter in question, and no stronger case has ever been presented to this court than the one before us.

This debtor, in his insolvent condition, on the second of October, 1888, assigned to Newman & Co. and to Robinson & Co. a large part of his notes and accounts (he being a merchant) as collaterals to secure the payment of certain debts he owed. On the sixth of the same month, within four days from this transfer, he executed a mortgage to Sutcliffe & Owen on twenty-one mules and other property to secure their debt. On the eighth of the same month he executed a mortgage to Bamberger, Bloom & Co. and other merchants on several tracts of land and some cattle to secure an indebtedness to each firm, and on the same day he executed to James Baker and William Hamilton a mortgage to secure a debt to the Bank of Columbia. This was on his homestead and store-house and other property. In November he executed a mortgage to Keith & Barlow on some of the same property, and a mortgage to a Cincinnati firm on his stock of goods, &c., and finally the debtor made an assignment of all his estate for creditors on the 22d of February, 1889. His creditors were not only seeking a preference, but

the debtor was willing to gratify them, and with a view of giving the preference, and in contemplation of insolvency, he executed the assignments and mortgages as already stated.

The testimony as to the object in view is irresistible, and the testimony of the debtor and creditors combined, to the effect that no such purpose was contemplated, would not be sufficient to repel the presumption arising from the acts of the parties that the purpose of the creditors was to obtain the preference, and that of the debtor to give it, and in contemplation of insolvency.  It is needless to discuss the facts of the case.  The bare statement is sufficient to sustain the judgment below.

The action was brought originally by the assignee, J. W. Kinnaird, to have the various transfers and conveyances to operate as an assignment to creditors.  The action was brought on the 8th of March, 1889.  On the 28th of March, 1889, Shuttleworth and others, the assignee among them, instituted an action as individual creditors to have these various transfers declared as acts of insolvency, making the same averments as was made by the assignee.  The action by the assignee was dismissed on the ground that he had no right to maintain such an action, or on the ground that two actions, one by the creditors and one by the assignee, could not be maintained.  The parties elected to abide by the creditors' action, and under that this proceeding was had.  It is, therefore, not necessary to decide whether the action could have been maintained by the assignee, the estate of the debtor having passed by operation of law to the creditors.  It was the duty, however, of the

assignee, under the circumstances, to have the question settled, as the appellants were claiming, in their independent actions, that the property belonged to the debtor, and, if so, it devolved upon him to see that the creditors were protected, and to administer the estate under the assignment. The creditors had filed their independent actions, and were asserting their right to enforce their liens upon all the mortgaged property, and to have the collateral paper held by them as security for their debts sold. The assignee set up the fact, and particularly in the case of Mason, &c., the non-residents, to the effect that the transfers and mortgages were in contemplation of insolvency, and with the design to prefer, and without objection the cases were all consolidated with the action by the creditors. It is now claimed that as they were not warned as non-residents, and had not made an actual appearance to the creditors' bill, they were not before the court. They were seeking to subject, in an independent action, property they claimed belonged to the debtor, and in the creditors' suit was claimed to belong to the creditors. The assignee of the debtor, by an answer, had set up the same facts as alleged in the creditors' petition, for the purpose of having determined to whom this property belonged, and when the case is decided adverse to the appellants they complain that they had not appeared in the action or been summoned. This is a technical view of the question, and is too late, even if available, to be made here. The assignee had made the question directly by his answer; the evidence, without objection, had been heard in the consolidated cases, was considered by

the court, and that an appearance must be regarded under the circumstances admits of no doubt.

The petition filed by Grauman & Shuttleworth was dismissed by them, but before the dismissal Kinnaird and Hamilton, who were both creditors, were made plaintiffs with them by an amended petition. This amended petition was filed on the same day the original petition was filed and process issued. There was a motion to quash the summons because it was blank. No blank summons appears here, nor is there any thing showing that the summons issued before the amended petition was filed. The petition, however, by Grauman & Shuttleworth inured to the benefit of all the creditors, and any creditor had the right to proceed under it, and whether the amendment was filed or not is immaterial. An order was entered to the effect that the dismissal was not to affect Kinnaird and Hamilton. Kinnaird was a creditor, if Hamilton was not, and the case was permitted to progress as it should have been for all the creditors; and the act of insolvency occurring on the 2d of October, 1889, all the transfers of real and personal estate and collections made from and after that date by reason of the transfers and in payment of these debts passed to the creditors. The only question to be considered in this case is as to the priority allowed the Bank of Columbia or James Baker for the fourteen hundred dollars embraced in the renewal note to the bank for paper past due. This mortgage to the bank, or to James Baker, was made when act after act of insolvency had been committed. The execution of the mortgage and the pledges of collaterals were known to the bank when the mortgage to James Baker was executed.

James Baker lived in the same town with the debtor
—they were friends—indorsed for each other, and there
was no reason for James Baker going on this paper,
or when going upon it requiring security in the way
of mortgage, except to secure himself on the six hun-
dred dollar note for which he was already liable.  The
president of the bank had left his town and gone to
the village in which the debtor lived, demanding secu-
rity on the over-due paper; prepared a mortgage that
James Baker knew but little about, and reciting that
it was to enure to the benefit of the bank.  Baker,
after this, renews the note to the bank in his own
name and assigns the mortgage to the bank without
even recollecting that he had done so, showing an
utter indifference to this assumed liability that was
evidently resorted to for the purpose of placing the
bank on a secure footing.  That this was a race by
creditors to obtain precedence and secure their debts
owing by an insolvent debtor, is too apparent from
the testimony to be controverted, and equally man-
ifest that the transaction with James Baker and the
debtor was to secure the bank's debt by a renewal,
that brings that case clearly within the purview of
the act of 1856, if it stood alone in this controversy.
There was no actual fraud on the part of the bank
president and James Baker, but such an effort as
every creditor of a failing debtor will resort to for
the purpose of saving his debt; but such acts as the
law now stands only places the creditor on an equality
with all the rest, and to prevent such preference the
statute was enacted.

The money that has been paid to the creditors on

collaterals must be refunded or credited on the claims, if the amount does not exceed the sum to which the creditor collecting it is entitled.

We are aware of the cases cited of Southworth v. Casey, reported in 78 Ky., 395, and Fuqua v. Ferrell, 80 Ky., 69. In the first case the debtor, before suit was brought, sold some of his property to a *bona fide* purchaser, and obtained the money, and this court held that parties who purchased in good faith could not be compelled to surrender the property, because the statute provides that the court shall compel every person acquiring by purchase, assignment or other-wise, property or effects of the debtor after the suit contemplated by that act shall be instituted, to sur-render the same to the receiver. The question decided in that case does not arise here, for the reason that none of the estate of the debtor was purchased in good faith; but all the collaterals and mortgages taken to secure antecedent debts by an insolvent debtor with the design to prefer, and the sums of money collected by the creditor from the collaterals is the money the chancellor requires refunded. The debtor has paid no money, as in the case of Fuqua v. Ferrell, but the creditor has collected it from the pledged estate, which pledge was an act of insolvency within the statute. In other words, there are no *bona fide* purchasers in this case, and while they are *bona fide* creditors, they have brought themselves within the statute by obtain-ing the preferences already referred to. *Bona fide* creditors are not protected unless the debt and mort-gage are simultaneously created and executed before suit brought, without knowledge of the contemplated

insolvency and the design to prefer. So these cases have no application here.

The judgment below is affirmed on the original and reversed on the cross-appeal as to James Baker and the bank. They must come in like any other creditor, except as to the homestead; this the debtor had the right to dispose of.

---

CASE 3—APPEAL TO CIRCUIT COURT—FEBRUARY 4.

