EAGLE v. SMYLIE.

HOMESTEAD—VOLUNTARY CONVEYANCE—ESTATES OF DECEDENTS—
RIGHTS OF CREDITORS.

> A homestead exemption is an absolute right, and not a mere
> privilege personal to the owner. Hence, creditors of a dece-
> dent cannot complain of a voluntary conveyance by him of
> his homestead during his last illness, though he left neither
> wife nor children him surviving.

Appeal from Wayne; Rohnert, J. Submitted January
30, 1901. Decided May 7, 1901.

Bill by Elizabeth E. Eagle against Robert W. Smylie,
administrator of the estate of James R. Elliott, deceased,.
George M. Savage, Richard William Elliott, Ralph Elli-
ott, Edward P. Elliott, Richard R. Elliott, Adelia M.
Savage, and James H. Savage, for a partition of real
estate. From an order directing the payment of the pro-
ceeds of decedent's interest to his grantee, George M..
Savage, the administrator appeals. Affirmed.

*M. Hubert O'Brien* (*Keena & Lightner*, of counsel),.
for appellant.

*Edward W. Pendleton*, for defendant George M. Sav-
age.

MOORE, J. By this appeal the court is asked to decide
the question whether the sum of $1,128.72, being a part of
the proceeds of the sale of certain premises, should be
paid to defendant George M. Savage or to the defendant
Robert W. Smylie, administrator of the estate of James
R. Elliott, deceased.

The proceeding in the court below was a bill of parti-
tion filed in March, A. D. 1899, wherein the complainant,.
Mrs. Elizabeth E. Eagle, sought to have partition of cer-

tain premises on Congress street east, in Detroit, which prior to 1841 belonged to her father, Robert Thomas Elliott, of Detroit. The bill of complaint sets up the many transfers in the title after that date, and shows that prior to August 3, A. D. 1898, James R. Elliott, an unmarried man, and brother of complainant, acquired substantially a six-sevenths interest in the property; that complainant had the largest remaining interest, and the other Elliott defendants held the small remaining undivided interests. In 1893, James R. Elliott, who alone of the owners in common of the premises had been in possession of the same for some years previous thereto, and who alone of said owners continued to occupy the same until his death, executed a mortgage upon his interest in the premises for the sum of $1,800, which mortgage defendant George M. Savage duly acquired after the death of said James R. Elliott, and shortly prior to the filing of the bill of partition. James R. Elliott died on August 31, A. D. 1898. During his last illness, and on or about August 3, A. D. 1898, Mr. Elliott, by quitclaim deed, conveyed an undivided one-half of his interest in the premises to Adelia M. Carey and to John C. Elliott, each. Miss Carey, shortly after the death of Mr. Elliott, married defendant George M. Savage, and she is a defendant in this proceeding as Adelia M. Savage. Defendant George M. Savage acquired by quitclaim deed the interest of his wife in said premises, and, subsequent to the filing of the bill of partition, also by quitclaim deeds, he acquired any interest that John C. Elliott had in the property.

The bill of complaint further sets forth the appointment of defendant Robert W. Smylie as administrator of the estate of James R. Elliott, deceased; the appointment of commissioners on claims in due course of administration in the probate court for the county of Wayne; the insolvency of the estate; and the claim asserted by defendant Smylie, as administrator, that, upon any sale of the premises under the partition proceedings, he was entitled to the interest therein, over and above the mortgage above

referred to, which James R. Elliott had prior to the 3d day of August, A. D. 1898, being the date of the quitclaim deeds to Miss Carey and to John C. Elliott, on the ground that the said conveyances were voluntary, and without consideration, as against claims of the creditors of deceased.

The answer of defendant Smylie, as administrator aforesaid, states the claims allowed against the estate of James R. Elliott, deceased, as being $4,704.39, and that the assets of the estate amounted to $640; and he asserts his right, as administrator, to the surplus, over the mortgage, which belonged to James R. Elliott before he gave the quitclaim deeds above referred to.

The answer of defendant George M. Savage and his wife denies the claim of defendant Smylie to the fund in question, and asserts that the quitclaim deeds were given upon sufficient consideration. This answer was afterwards amended, setting up that the land conveyed was a homestead when the quitclaim deeds were made, in which the creditors had no interest.

On February 26, A. D. 1900, a decree was entered in the circuit court, establishing the interests of the several owners in common to the premises, ordering a sale of the property, and reserving for the further order of the court the determination of several questions, among which was the controversy between defendant Savage and defendant Smylie, as administrator, as to their right to any amount arising from the sale which would represent the interest, over and above the mortgage, which James R. Elliott had in the premises on August 3, A. D. 1898. This amount was determined to be $1,128.72.

It is not claimed there was any intent on the part of Mr. Elliott to defraud his creditors in making this deed. The grantees in the deed were adopted children, who had lived with him a long time, and rendered him valuable service, and he without doubt thought he was leaving enough estate to pay his debts; but it is insisted that, as he was in fact insolvent, the conveyance was, in law, a fraud upon his creditors.

In our view of the case we need consider but one question, and that is whether the creditors can complain of the conveyance by Mr. Elliott of his homestead. The position of counsel for the administrator is that the homestead is not an absolute estate, but at most is an artificial estate, which may be waived by the person to whose benefit it inures; citing *Riggs* v. *Sterling*, 60 Mich. 652 (27 N. W. 705, 1 Am. St. Rep. 554); 15 Am. & Eng. Enc. Law (2d Ed.), 638, 639. Counsel say:

"We admit that James R. Elliott had a homestead interest in the premises at the time he executed the quitclaim deeds in question, while calling attention to the fact that he alone had any such interest in the property, and while emphasizing the fact that any homestead interest in the premises lapsed with his death. There being no widow or children surviving him, the provisions of sections 3 and 4 of article 16 of the Constitution have no application to this case. We admit that the homestead law (3 Comp. Laws 1897, § 10362), which is founded upon the constitutional provisions, has been and should be liberally construed, and that the real estate, while occupied as a homestead (that is, in this case, during the life of James R. Elliott), could not be levied upon or in any other way subjected to the claims of his creditors. Furthermore, we admit that James R. Elliott might have sold his property, and during his lifetime his creditors could not complain of the sale, even if it was voluntary. And, further, if Mr. Elliott had sold his interest in the property for, say, $1,500, this fund would likewise have been exempt from process during a reasonable time within which to invest the same in another homestead. *Cullen* v. *Harris*, 111 Mich. 20 (69 N. W. 78, 66 Am. St. Rep. 380). But our contention is that appellant, as administrator, may, in behalf of such creditors, attack such voluntary conveyance after the death of James R. Elliott."

They argue that the homestead is a privilege personal to the owner, and may be waived by him, and that a gift of the homestead is fraudulent as to the creditors; citing *Fellows* v. *Lewis*, 65 Ala. 343 (39 Am. Rep. 1); *Kingsbury* v. *Wild*, 3 N. H. 30; *Currier* v. *Sutherland*, 54 N. H. 486 (20 Am. Rep. 143); *Ruohs* v. *Hooke*, 3 Lea, 306 (31 Am. Rep. 642); *Schaffer* v. *Beldsmeier*, 107 Mo. 314

(17 S. W. 797); *Miller* v. *Leeper*, 120 Mo. 466 (25 S. W. 378).

An examination of the authorities will show a want of harmony in them. The following authorities are to the effect that a creditor has no interest in a homestead, and cannot complain of its conveyance by the debtor: *Crummen* v. *Bennet*, 68 N. C. 494; *Sears* v. *Hanks*, 14 Ohio St. 298 (84 Am. Dec. 378); *Wood* v. *Chambers*, 20 Tex. 247 (70 Am. Dec. 382); *Hibben* v. *Soyer*, 33 Wis. 319; *Dreutzer* v. *Bell*, 11 Wis. 114; *Conklin* v. *Foster*, 57 Ill. 104; *Hartwell* v. *McDonald*, 69 Ill. 293; Smyth, Homest. § 234; *Legro* v. *Lord*, 10 Me. 165; *Baker* v. *Kinnaird*, 94 Ky. 5 (21 S. W. 237). In *Marshall* v. *Strange*, (Ky.) 9 S. W. 250, it was held that, where a debtor conveys a portion of his homestead, the whole of which is worth less than the statutory limit, his creditors cannot, after his death, charge the land so conveyed with his debts. In *Grimes* v. *Portman*, 99 Mo. 229 (12 S. W. 792), it was held one may sell, mortgage, or give away his homestead, and his creditors cannot complain.

The question in this State is not a new one. The constitutional provision is as follows:

"Every homestead * * * shall be exempt from forced sale on execution, or any other final process from a court, for any debt contracted after the adoption of this Constitution." Article 16, § 2.

The statutory provision reads:

"A homestead * * * owned and occupied by any resident of this State shall not be subject to forced sale on execution, or any other final process from a court, for any debt or debts growing out of or founded upon contract, either express or implied, made after the third day of July, A. D. 1848." Section 10362, 3 Comp. Laws 1897.

In *Riggs* v. *Sterling*, 60 Mich. 643 (27 N. W. 705, 1 Am. St. Rep. 554), it was argued, as it is argued here, that the homestead is a privilege personal to the owner, and not an absolute right. The court said:

"The homestead exemption, as it now exists, is not

only a privilege conferred (*Chamberlain* v. *Lyell*, 3 Mich. 458), but, under the Constitution, it is an absolute right. 'It was intended to secure against creditors a home, and, to a certain extent, the means of support, to every family in the State.' *Dye* v. *Mann*, 10 Mich. 297; *McKee* v. *Wilcox*, 11 Mich. 358 (83 Am. Dec. 743)."

In *Farrand* v. *Caton*, 69 Mich., at page 242 (37 N. W. 203), it is said one may do what he pleases with his exempt property.

In *Anderson* v. *Odell*, 51 Mich. 492 (16 N. W. 870), it is said creditors have no right to complain of dealings with property which the law does not allow them to apply on their claims.

In *Rhead* v. *Hounson*, 46 Mich. 243 (9 N. W. 267), in speaking of a voluntary conveyance of real estate from a father to his son, the court said:

"It appears conclusively from the bill and evidence that, when the execution debtor gave the deed in question, he held and occupied a homestead on the premises. That part of the farm was therefore exempt. The holder was as free to dispose of it without interference as though he had not been indebted at all,"—citing *Smith* v. *Rumsey*, 33 Mich. 183.

See, also, *Pulte* v. *Geller*, 47 Mich. 560 (11 N. W. 385); *Vermont Sav. Bank* v. *Elliott*, 53 Mich. 256 (18 N. W. 805); *Armitage* v. *Toll*, 64 Mich. 412 (31 N. W. 408); *Toll* v. *Davenport*, 74 Mich. 386 (42 N. W. 63); *Cullen* v. *Harris*, 111 Mich. 20 (69 N. W. 78, 66 Am. St. Rep. 380).

We think the circuit judge made a decree in harmony with the uniform decisions of this court. The decree is affirmed.

MONTGOMERY, C. J., HOOKER and LONG, JJ., concurred. GRANT, J., did not sit.