## Reynolds v. Sizemore et al.

(Decided February 18, 1930.)

F. J. EVERSOLE for appellant.

G. C. WILSON for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE THOMAS—
Affirming in part and reversing in part.

A. C. McIntosh in 1923 was appointed, by the county court of Perry county, administrator of the estate of Estill Sizemore, who had previously died intestate and a resident of that county. There came into his hands as administrator, as assets of the estate, $8,712.26. Decedent left surviving him only his widow, but there was subsequently born a posthumous child, Lawrence Sizemore, and plaintiff and appellee below Hazard Bank & Trust Company was duly appointed its statutory guardian. The only distributees, therefore, of this fund were the infant heir and his mother, each being entitled to one-half thereof; but McIntosh squandered and dissipated the estate that came into his hands, and he was ruled a number of times to make settlement, but failed and refused to do so. Thereupon he was removed by an order of the Perry county court, and G. C. Wilson was appointed in his stead.

This action was thereafter filed in the Perry circuit court by the guardian of the infant against McIntosh and his sureties in his bond to recover the amount due the infant, which it was alleged was the sum of $3,500. The

last appointed administrator of the deceased, Estill Sizemore, later came into the action and sought the same relief. At the beginning of the action, plaintiff alleged grounds for, and obtained, an attachment which was levied by the sheriff on a farm in Perry county containing somewhere between 60 and 75 acres, and which the proof in the case shows was of the value of between three and four thousand dollars. By an order of court, the sheriff sold the land under the attachment, and it brought the sum of $3,000, for which the purchaser executed bond. Upon the procurement of the attachment on the date the suit was filed (which was July 22, 1926), plaintiff filed with the county court clerk of Perry county a lis pendens notice, as required by section 2358a-1 of Carroll's 1930 edition of Kentucky Statutes.

In due time, the appellant, Elihu Reynolds, was made a party defendant to the action, and he answered with a cross-petition, and in it he averred that he was the owner of the attached land, and that he first acquired an interest therein under a title bond executed to him by McIntosh on June 12, 1926, one month and ten days before this action was filed, and under its terms McIntosh agreed to exchange the involved land for a farm claimed to be owned by Reynolds in the state of Indiana. The terms of that exchange were stated in the bond, and they are not material to the questions involved. At that time McIntosh was a housekeeper, with a family resident upon the attached land, and in which, under the provisions of section 1702 of our Statutes, he owned a homestead of the value of $1,000, which was exempt to him from appropriation by his creditor or creditors.

The title bond was not recorded at the time of the obtention of the attachment, and plaintiff had neither actual nor constructive notice, if indeed the recording of the bond had been sufficient for the latter purpose. Neither did it, according to the facts manifested by the record, have knowledge of any fact which would be sufficient to impute actual knowledge. The vendor in the title bond was in the actual possession at the time it was executed to Reynolds, and continuously remained so up to and including the date of the execution of the deed on October 24 thereafter; so that no imputed notice could be charged to plaintiff because of any change in possession of the attached property.

Much evidence was taken, and lengthy argument is made in briefs upon the issue as to whether the deed to

the farm by Reynolds was fraudulently procured from McIntosh, and as to whether there was a total failure of consideration for both the title bond and the deed executed by McIntosh to Reynolds. But, under our view of the law governing the disposition of this case, we need not enter into a discussion of, or attempt to determine either of those questions, although the judgment of the court sought to be reviewed by this appeal is in part bottomed upon the finding in the affirmative of both of them. The judgment, apart from the reasons therefor, adjudged the proceeds of the land to plaintiff in part satisfaction of the amount adjudged to be due it as guardian for its ward. No one appealed therefrom except Reynolds, and he, by his counsel, urges as grounds for reversal (1) that he was a bona fide purchaser of the land for a valuable consideration, and that his rights as such first began upon the execution of the title bond which was prior to plaintiff's attachment, and should prevail over it to the extent of the entire proceeds of the sale; but, if mistaken in that, then (2) that he is at least entitled to be adjudged $1,000 of the proceeds, being the amount of the homestead exemption of McIntosh, his vendor, and which is due him as the vendee of the homesteader, regardless of any alleged fraud perpetrated on McIntosh, or by the latter upon any of his creditors, or because of the absence of any consideration.

Section 496 of our present Statutes says: "No deed or deed of trust or mortgage conveying a legal or equitable title to real or personal estate shall be valid against a purchaser for a valuable consideration, without notice thereof, or against creditors, until such deed or mortgage shall be acknowledged or proved according to law and lodged for record." In 1916 (Acts 1916, c. 41)) that section was amended by adding thereto these words: "The word 'creditors' as used herein shall include all creditors irrespective of whether or not they may have acquired a lien by legal or equitable proceedings or by voluntary conveyance." In a number of cases, one of which is Mason & Moody v. Scruggs, 207 Ky. 66, 268 S. W. 833, we construed that amendment to include subsequent as well as antecedent creditors, and to permit either class to obtain a superior lien by attachment when the creditors were without actual or constructive knowledge of any prior incumbrance. That being true, it inevitably follows that plaintiff by its attachment, obtained and levied at a time when it had no notice of any character of

interest of Reynolds in the attached property, acquired a superior right to appropriate it as against him to the extent that it could be so appropriated as against McIntosh, and to that extent the judgment was and is undoubtedly proper; and which results in denying argument 1 made by counsel for appellant.

A different question, however, is presented by ground 2, relied on by counsel. Section 1702 of our present Statutes expressly exempts from the appropriation for debt $1,000 worth of real estate upon which the debtor resides at the time of the attempted appropriation, provided he is a bona fide housekeeper with a family, and that the debt sought to be collected was created subsequent to the acquisition of the homestead. McIntosh, as we have seen, was such a housekeeper at the times of the levying of the attachment and the sale of the land, and resided on it with his family; and the debt sought to be collected was made and created subsequent to his acquiring the land, which latter act was done in 1920, and he was appointed administrator of Sizemore in 1923, followed by his defalcation. There is some conflict and much confusion in our opinions touching the extent of interest of the homesteader, under our statute, supra, in and to the proceeds of his homestead when sold by him; i. e., whether such proceeds in his hands are exempt to the same extent as was his sold homestead, and, if so, whether such exemption was and is absolute or for only a temporary period within which he might reinvest them in another homestead. In other words, whether such proceeds could be appropriated by his creditor after a lapse of a reasonable time for reinvestment without its having been done? The cases creating such confusion and conflict will be found collected in subdivision (c) to note 9, on page 835, of 29 C. J., and we will not lengthen this opinion by incorporating them.

However, we are not concerned with any such question in this case, since at the time of the attachment and the sale thereunder, and at the times that the title bond and deed were executed to Reynolds, McIntosh was entitled either to $1,000 worth of land in kind to be set apart to him out of his entire homestead tract, or to its proceeds to that extent, if sold by an order of court. Some of the confusion with reference to the absoluteness of exemption in homestead cases is due to the fact that some courts and some attorneys fail to distinguish between a homestead exemption as against creditors and

homestead rights obtained by a surviving spouse in a home owned by the deceased one. The right in the latter case is only one of occupancy, and cannot be transferred. If a conveyance thereof should be attempted, the vendee obtains nothing, and the homestead becomes abandoned. Overby v. Williams, 170 Ky. 140, 185 S. W. 822, and cases therein cited, together with others following it.

Both law-writers and courts, in discussing the general subject of "homestead rights," frequently cite cases dealing with such right of occupancy by the surviving spouse, and also cases dealing with absolute homestead rights to a fixed amount of valuation as entirely exempt from the appropriation to the payment of debts of the owner, which caused the apparent scrambled condition of the law upon the subject. The latter homestead right, while it may or may not be technically an estate in the owner, is such a right as that the owner may deal with as he pleases without the right of any of his creditors to call in question his action in doing so. He may convey it away, either fraudulently or voluntarily, and without consideration, and no creditor may gainsay his action. The text in 27 C. J. 650, sec. 417, expressly says that "a conveyance of a homestead (exempt by statute from debt) although made with intent to defraud creditors, vests the title thereto in the grantee, and this is so, although the land constituting the homestead is conveyed with other land, the conveyance being sustained as to so much of the land as constitutes the homestead of the grantor." In the same volume, page 438, section 62, it is stated, in substance, that no fraud is committed on creditors by disposing of exempt property by the debtor, and that he may sell it, give it away, or dispose of it in any manner he pleases, and the transaction "can not be impeached by creditors as in fraud of their rights." A Kentucky case cited in support of that text is Pike County v. Sowards, 147 Ky. 37, 143 S. W. 745.

In the notes of Carroll's 1930 edition of the Kentucky Statutes to sections 1702, 1906, and 1910 therein will be found a number of cases from this court sustaining the right of the owner of an exempted homestead to convey it, even without valuable consideration. Tong v. Eifort, 80 Ky. 152, 3 Ky. Law Rep. 657, and also other cases holding that a sale of such a homestead is not a fraud upon the creditors. Cosby v. Ross, 3 J. J. Marsh, 290, 20 Am. Dec. 140; Lishy v. Perry, 6 Bush, 515; Fuqua v. Ferrell, 80 Ky. 69, 3 Ky. Law Rep. 571; Anthony v.

Wade, 1 Bush, 110; Baker v. Kinnaird, 94 Ky. 5, 21 S. W. 237, 14 Ky. Law Rep. 695, and Calloway v. Calloway, 39 S. W. 241, 19 Ky. Law Rep. 870.

Necessarily, it would follow that, if the property so conveyed was exempt in the hands of the vendor, he could convey a like exempt title to his vendee, and such is stated to be the prevailing rule in the text in 29 C. J. 319, sec. 325, in support of which the domestic cases of Baker v. Kinnaird, 94 Ky. 5, 21 S. W. 237, 14 Ky. Law Rep. 695; the Tong case, supra; Dowd v. Hurley, 78 Ky. 260; Brooks v. Collins, 11 Bush 622; Maynard v. May, 11 S. W. 806, 11 Ky. Law Rep. 166, and Marshall v. Strange, 9 S. W. 250, 10 Ky. Law Rep. 410, are cited.

So that McIntosh, in this case being entitled, as we have seen, to his statutory homestead exemptions in the attached land (that was later sold) at the time of the levying of the attachment, as well as at the date of the sale, any conveyance or incumbrance theretofore made by him of any portion of that property that was not subject to the debt of plaintiff, his creditor, vested his vendee, or the one in favor of whom the incumbrance was made, with an absolute title to all of his exempted rights therein, which in this case was to the extent of $1,000; and whether he created such interest fraudulently or without consideration makes no difference whatever. Therefore all of the evidence and argument upon or with reference to such matters are wholly foreign to the case, since, if it should be conceded that such facts were indisputably proven, they would not enlarge the right of plaintiff so as to entitle it to appropriate the proceeds of McIntosh's exempted interest in the attached and subsequently sold property.

The court therefore erred in not adjudging Reynolds, the vendee of McIntosh, $1,000 of the proceeds of the sale, and because of which ground 2 must be sustained. The question as to what may be the rights as between McIntosh and Reynolds is not involved in this case, and it is therefore not determined.

For the reasons stated, the judgment is affirmed in so far as it held the attachment lien of plaintiff superior to the claim of appellant; but, in so far as it denied Reynolds the proceeds of the exemption rights of McIntosh to the extent of $1,000, it is reversed, with directions to set it aside and render one in conformity with this opinion.