## Tipton's Administratrix v. Ball et al.

(Decided Dec. 14, 1934.)

C. C. WILLIAMS for appellant.
DUNCAN & BELL and E. BERTRAM for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

On April 7, 1930, the People's Bank of Mt. Vernon (Kentucky) was clearly insolvent. Some two or three weeks thereafter its doors were closed and the liquidation of its assets and affairs was assumed by the State Banking Commissioner and his local deputy banking commissioner; the latter taking personal custody of its office and assets. On the date mentioned (April 7, 1930), the appellee, one of the defendants below, A. J. Ball, had a deposit account with the bank amounting to about $1,000, and his wife also had one amounting to about $3,000. In liquidation of those two accounts the bank on that day transferred to either A. J. Ball himself, or to his wife (the record not disclosing), notes that it held amounting to practically the aggregate sum of the deposits of both Ball and wife. Among the notes so transferred were two for which the original plaintiff, N. J. Tipton, was bound as surety; the principals in both being insolvent.

On August 11, 1930, more than three months after the Banking Commissioner took charge, Tipton filed this equity action in the Rockcastle circuit court against appellee and defendant A. J. Ball and others (but not against Mrs. Ball) seeking to have the assignment of the two notes upon which he was obligated to the bank as surety (one for $400 and the other for $500) declared

as a fraudulent preference, and to have that transaction operate as an assignment for the benefit of creditors, which is authorized by sections 1910, 1911 of our present Statutes, commonly known as the "Act of 1856." The petition set out none of the other notes that were transferred to Ball, nor did it seek to have the transfer of them molested in any manner. It alleged that plaintiff was a depositor in the bank when it closed its doors to the amount of something more than $4,600, and that but for the transfer of the two notes upon which he was so obligated he would have the right in the liquidation of its affairs to have those notes paid by crediting their amounts on his impaired deposit account, whereby he would be individually benefited to that extent; the prayer being in these words: "Wherefore, the plaintiff prays that the two notes of $500.00 each ($100.00 having been paid on one of them) set out in the petition, be adjudged as a credit on the amount the defendant bank owes the plaintiff, and prays that said notes be cancelled and adjudged to be settled; and that the defendant Ball be required to deliver said notes to the defendant, Hiatt, and that the defendant Hiatt be required to deliver the same to the plaintiff herein, and that the said transfer and assignment be adjudged as a preference, and operate as an assignment of all of the property of the said bank, and for cost herein expended, and for all relief to which the plaintiff may show himself entitled."

It is, therefore, clear that such personal and individual relief was sought to be obtained through the avenue of the statute supra, although it expressly declares that the remedy and relief for which it provides "shall inure to the benefit of all his [transferer's] creditors in proportion to the amount of their respective demands." It is therefore extremely doubtful whether the terms of the statute are broad enough to provide for the specific individual relief sought by plaintiff in his petition; but because of our conclusions hereinafter stated, it will be unnecessary to determine that question in this case, and for which reason it will not be done. The appellee and defendant Ball filed a special demurrer to the petition expressly based upon the ground that the banking commissioner was a necessary party, and without waiving it he filed a general demurrer to the petition. Before the special demurrer was acted on, the petition was amended by making the then Banking Commissioner a party defendant, but no summons was served upon him. There-

after both the special and general demurrers to the petition were overruled, and defendant declining to plead further, the court rendered judgment sustaining the prayer of the petition by granting plaintiff the individual relief for which he prayed.

That judgment on appeal here was reversed in the case of Ball v. Tipton, 242 Ky. 181, 45 S. W. (2d) 1044, 1045, upon the *sole* ground that the Banking Commissioner had not been summoned when the judgment then under review was rendered, and directions were given that the then Banking Commissioner be brought before the court upon a return of the case, which was done following the filing of the mandate; but in our opinion we said: "All other questions are reserved." When the mandate was filed and the present Banking Commissioner was brought before the court as directed, the six months following the attacked tranfer had long since expired. Later, defendant Ball filed his answer denying the averments of the petition and it was followed by pleadings forming the issues. Proof was taken, and upon final submission the court rendered judgment dismissing the petition, and to reverse it appellant, the personal representative of plaintiff, who had died in the meantime, prosecutes this appeal.

Prior to the creation of our State Banking Department by statute in 1912 (Acts 1912, c. 4), insolvent banking corporations, as well as all others, could be liquidated through the provisions of chapter 7 of our Statutes, being section 74 to and including section 96, relating to "voluntary assignments" for the benefit of creditors, including such as might be declared so under the provisions of the sections supra of the Statutes. Such process of liquidation was commenced by the execution of a voluntary deed by the insolvent conveying all his property to a selected assignee in trust for his creditors with the authority in the assignee to collect and distribute such assets ratably between the creditors after defraying the cost of the liquidation. One section of that statute (section 84) expressly authorized such voluntary assignees to attack the fraudulent preferences described in section 1910 of the Statutes, and expressly withheld the right of the creditor to do so without first requesting the assignee (or trustee) to file it, followed by his refusal to do so. But, in either event the section said: "And property so recovered shall become a part of the estate and be distributed as other assets." That

excerpt fortifies the statement hereinbefore made that the relief provided by sections supra of our statute was exclusively for the ratable benefit of all creditors of the preferential transferor.

In denying the right of the creditor to maintain an action like this without first requesting the assignee to bring it, we said in the case of Hall's Assignees v. Rothchild & Son, 102 Ky. 582, 44 S. W. 108, 109, 19 Ky. Law Rep. 1621: "Therefore, it was indispensable for the appellees in this case, in order to maintain their action, to allege that the appellants, assignees, had, upon demand, refused to institute the necessary proceedings to set aside said mortgage." That opinion was referred to with approval in the later one of Wisdom v. Russell, 53 S. W. 284, 21 Ky. Law Rep. 881. But the defendants in the latter action, two of whom were the assignee and the preferred creditor, waived the right of the plaintiff therein to maintain the action by not objecting to it in any manner in the trial court. However, the opinion clearly indicates that if the objection had been properly made it should have been sustained. The requirement contained in that section of our statute (section 84) is but declaratory of the well-settled rule applicable to such conditions in prescribing when a beneficiary in a trust fund may maintain an action for the benefit of the trust which is primarily vested in the trustee. That rule is to the effect that no such action may be maintained by a beneficiary without first making demand of the trustee to bring it followed by his refusal. See Deering et al. v. Stites et al., — Ky. — , — S. W. (2d) — , decided December 11, 1934.

Our present statute, first enacted in 1912, and now sections 165a-1 to and including 165a-22, provides for a special procedure whereby insolvent banks may be liquidated, and creates the office of State Banking Commissioner as a statutory assignee or trustee with the powers of an assignee of insolvent estate under our "voluntary assignments" statute supra, and which is clearly deducible, not only from the terms of the statute creating the Banking Department, but also from our interpretations thereof in the cases of American Southern National Bank v. Smith, Banking Commissioner, 170 Ky. 512, 186 S. W. 482, Ann. Cas. 1918B, 959; Denny, Banking Commissioner, v. Fishter, 238 Ky. 127, 36 S. W. (2d) 864; and Finan v. Finan's Trustee, 247 Ky. 658, 57 S. W. (2d) 644. The latter case dealt with the power

and authority of a bankrupt's trustee to maintain the identical cause of action here involved (i. e., an attack of a preferential conveyance), and we held that it could be maintained by him. The Banking Commissioner, although he may have increased powers beyond that possessed by a voluntary assignee of an insolvent estate, is nevertheless given, by the statute creating his office, the right to collect the assets of the insolvent bank, and to distribute them among its creditors after the same fashion that a voluntary assignee is required to do in liquidating insolvent estates under his control. We, therefore, conclude that before Tipton could maintain this action in his individual name (even if it were one for the benefit of creditors generally and not for his exclusive personal benefit), it was necessary for him to allege and prove, if denied, that he requested the Banking Commissioner to take action, followed by his refusal or declination to do so, unless demand and refusal was in some manner waived by those entitled to insist upon it. Neither the Banking Commissioner, after he was made a party, nor the defendant Ball, committed any such waiver, and the latter expressly raised and relied on the defense by filing his demurrers to the petition. The Banking Commissioner, as we have said, was not brought into the case until more than six months after the attacked assignment and transfer had been made, which was at a time when he himself could not have brought the action in his fiduciary capacity, since the time for doing so is limited to six months after the preference was made, and which fact constitutes a material distinction between this case and the Wisdom Case, supra, even if the Banking Commissioner had attempted to waive such condition precedent, but which he did not do. Therefore, there exists in this case no reason why the right of action should be upheld, or why such precedent condition should not be enforced.

But few states have statutes similar to our one as embodied in sections 1910, 1911 et seq., and prior to their enactment in jurisdictions adopting them, and in all other jurisdictions not adopting them, it was and is lawful for a debtor to prefer his creditor, and it was only for the providing for a pro rata benefit to be reaped by all of his creditors that such statutes were enacted. The only vice of which the defendant Ball was guilty was the alleged fraudulent transaction in which he participated and by which he took from the bank a certain amount of its assets which depleted the sum for

ratable distribution among its creditors upon final liquidation. But at the time of the attacked transaction there was no statute, nor any rule of law so far as we are aware, which denied him the right to purchase from the bank, and credit his deposit account by the amount thereof, a note of another one of its creditors, so as to deprive the latter of the right to satisfy his transferred note out of his deposit claim against the bank. Such, we repeat, would seem to be the correct conclusion, but which, for the reasons stated, it is not now necessary to determine.

Since, however, the action could not be maintained in the manner attempted, the court properly dismissed the petition, and its judgment is affirmed.