## Kinnarney v. Corcoran, Special Deputy Banking Commissioner and Liquidator et al.

March 14, 1941.

Frank E. Daugherty and Garland R. Hubbard for appellant.

R. P. Dietzman, Eugene Moseley, Jr., and Grafton & Grafton for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

Appellant and plaintiff below, James W. Kinnarney, by this action filed by him in the Jefferson circuit court against appellees and defendants below, sought to recover against all of the defendants—upon certain alleged grounds—the sum of $10,000, and the cancellation of a contract that had been executed by him on November 7, 1938. On separately alleged facts he sought recovery of the same sum against only a part of defendants based upon additional grounds applicable only to them. After filing his original petition, to which the court sustained a demurrer, plaintiff filed a substitute reformed and amended petition which he later further amended and to which the court sustained defendants' demurrer and dismissed plaintiff's petition upon his declining to plead further. The correctness of the court's action in sustaining the demurrer to plaintiff's petition, as so amended and reformed in his efforts to get into and stay in court, is the sole question to be determined on this appeal. In disposing of it, the petition and its two amendments will be referred to as a single pleading under the designation of "petition."

Plaintiff alleged therein that certain named defendants were, on the dates of the transactions of which he complains, directors of the Peoples Bank of Louisville, Kentucky, which closed its doors and was taken possession of on May 20, 1939, by Hiram Wilhoit, Director of

Banking of the State of Kentucky, and at the time of the filing of this action on November 6, 1939, its affairs were being liquidated by that officer through his proper local deputy. Plaintiff alleged in his petition that on November 1, 1938, he, as owner of more stock in the bank than any other stock holder, then had in his possession a certificate of deposit with the bank to the amount of $30,000, and that on that day he cashed a part of his certificates to the amount of $25,250, and drew out of the bank the latter amount; but before doing so he inquired of one of the defendants, R. L. Ross, who was a director and cashier of the bank, ''whether or not the withdrawal of said sum would impair the condition of said bank,'' and that Ross assured him that it would not. It is then alleged that on the next day, November 2, he surrendered and cashed the remaining portion of his certificates and on the same day made a deposit in the bank of $4,750, which, added to the amount he then had in the bank, made his deposit $5,086.47; that at the time he deposited the $4,750 he thought the bank was solvent, although at that time, as he avers, the affairs of the bank were being examined by a State Bank Examiner, who had progressed with his examination far enough to show that its financial condition, from a legal standpoint at least, was considerably impaired, and that unless some action was taken to rejuvenate and restore such impairment the banking department of the state would be compelled to take it in charge and wind up its affairs under our statutory procedure provided for that purpose. Plaintiff then alleges that on November 6, 1938, the officials and directors of the bank in some sort of conference—and when plaintiff was present—held a meeting and discussed the affairs of the bank and concluded to make a trip to Frankfort on the next day (November 7th) for the purpose of consulting with an attorney and developing some plan to prevent the affairs of the bank from being taken into custody and its affairs wound up under the law, and that he was invited to and did attend that meeting in Frankfort; that the parties after arriving in Frankfort brought into the consultation their attorney—whose name is never given—and that the final conclusion of the meeting was that stockholders and others financially interested in the bank's welfare and who were desirous of its continuing to operate should put money into it to be credited to its ''undivided profits account;'' that to

secure the re-payment of the sums so deposited to the ones making them, the future earnings of the bank as so restored would be devoted to that purpose, and the directors of the bank, upon notice to them by such depositors, would make assessments on the stockholders to the extent that might be necessary to pay those making such deposits, and it was agreed that a contract to that effect should be drawn and executed, which was done. It described triplicate parties—the bank being "party of the first part," the directors "parties of the second part," and those who made such deposits "parties of the third part." Its terms were in accord with our above condensed recitation of them.

A number of stockholders—some of whom were, perhaps, directors and among whom was plaintiff— were specially designated as parties of the third part and it was recited the amount of money that each of them proposed to deposit as transfusion of financial blood for the recovery of the bank as the threatened expiring patient. Plaintiff agreed to deposit $10,000 for that purpose, while others agreed to deposit different sums, and it was stipulated that any others who desired to become parties of the third part upon the terms set out in the contract might do so.

Plaintiff sought by his petition to recover the $10,000 deposited by him from the deputy banking commissioner in charge of the bank, and against certain specially named directors and defendants, upon the ground that he was misled by them and through their "fraud and threats" he was induced to sign the contract and to make his deposit. He then charged, as an additional reason why he should recover, that the unnamed attorney stated to him that the Court of Appeals had decided that in the circumstances he would be compelled to return to the bank the $25,250 he had withdrawn from it a few days before making the contract, which statement he alleged was false and fraudulent, and made by the attorney to induce him, plaintiff, to enter into the contract as party of the third part. The additional allegation was also made against one of the defendants (D. Lampton) that he, Lampton, stated to plaintiff, in order to induce him to sign the contract and make the deposit which he agreed to and did do, "that he (Lampton) would personally guarantee that this plaintiff would get his money back, and would not lose a cent."

He then concludes, in substance, that by such various acts of "covin and spleen" he was induced to sign the agreement and to deposit his $10,000 in the bank for the purposes stated which he would not have done had he known the condition of the bank and had the facts been truly represented to him instead of fraudulently concealed from him. He, therefore, prayed that he recover judgment against defendants upon the grounds stated against each of them, as well as against the deputy banking commissioner in charge, for the amount of his deposit of $10,000, and that his contract be cancelled so as to relieve him of the payment of an additional $10,000 agreed to be paid by him in the contract within sixty days if requested to do so, but which request was never made.

In addition to all of the foregoing grounds for attacking the validity of the contract in its inception, he also averred that its terms had been violated since its execution by defendants, in that they held meetings of the directors without notifying him, as the contract provided should not be done, and that other steps were taken contrary to the terms of the contract, but all of which were according to law and which it was incompetent for the directors to agree should not be done—and for all of which reasons (plus the fact that plaintiff averred that he possessed a limited education and was ignorant as to what was meant by the phrase "impairment of the bank's assets," although he averred that Ross told him when he withdrew from the bank the $25,250 that his doing so would not impair the assets of the bank) he should be relieved from the obligations of his contract by having it rescinded.

From what we have recited as to the contents of the petition, to which was attached a copy of the agreement referred to, it will be seen that the situation portrayed was and is simply this: That the Peoples Bank, in which plaintiff was the largest stockholder, had become in a more or less shaky and involved condition—so much so as to induce the banking authorities of the state to inaugurate an investigation of its affairs, which the directors and, no doubt, the stockholders who knew about it, apprehended would result in the bank's affairs being wound up, unless something could be done to alleviate the situation. The directors as such—and plaintiff, no doubt, as a largely interested stockholder—did not want

the affairs of the bank to be wound up and liquidated in such manner, and they began to discuss ways, means and methods whereby it might be prevented, resulting in the final plan that was embodied in the contract. In such circumstances it would be a monumental strain on human credulity to believe plaintiff was not aware of the situation, as well as the purpose intended to be accomplished by the execution of the contract by himself and all others composing its "parties of the third part."

However, that question is largely, and perhaps exclusively, one of fact and perhaps might not be taken into consideration in the determination of a demurrer to plaintiff's pleading. Therefore, it becomes necessary to consider the averments of the petition to determine whether it states grounds for relief against any of the defendants. At the beginning of this part of the opinion, it should be stated that plaintiff nowhere averred that he did not know the contents of the writing, or that it omitted to state any fact not discussed or understood at the time, nor did it contain any which he had not agreed to. We, therefore, turn to a consideration of its terms to ascertain whether or not the court correctly sustained the demurrer to plaintiff's pleading.

To begin with, it should be remembered that such an exhibit may not add to a pleading with which it is annexed, but it may detract therefrom. That rule of practice is too well settled to require the citation of precedent authority for its support, and for which reason we will not attempt to do so. Under the terms of the agreement it was stipulated, as we have seen, that plaintiff and his co-members of "parties of the third part" should be remunerated out of future earnings of the bank after its resuscitation, and by assessments against its stockholders by the directors upon notice from the parties of the third part to take that step. The bank continued to operate from the date of the contract on November 7, 1938, to May 20, 1939; but the petition nowhere alleged that it earned any profits during that time, nor if it did that they were misappropriated in a manner contrary to any legal obligations imposed by the contract on the managers of the bank. Furthermore, plaintiff made no allegation that he, as a member of "parties of the third part," ever requested any assessment to be made on the bank's stockholders, nor did he anywhere aver that a 100% assessment against them, or

any profits the bank may have earned before it finally expired, would not have been sufficient to have liquidated all of the deposits made by the "parties of the third part." He, therefore, failed to aver that he was ever caused to lose any amount on account of the failure of defendants to carry out the terms of the contract.

Moreover, the failure to perform future promises agreed to in the contract on the part of its directors as parties of the second part does not constitute fraud, as was held by us in the case of Electric Hammer Corporation v. Deddens, 206 Ky. 232, 267 S. W. 207. Furthermore, the promises relied on by plaintiff as contained in the contract on the part of the bank's directors at least smacked of an agreement to prefer the "parties of the third part" contrary to public policy as is expressed in Section 1910 of Baldwin's 1936 Revision of Carroll's Kentucky Statutes. Since, therefore, plaintiff *does not* aver that he *did not* understand the contract he signed, nor does he point out that the writing *did not* embody the understanding of the parties as orally agreed to, and since the contract recited the condition of the bank's financial affairs, it is difficult to comprehend wherein a misrepresentation as to the solvency of the bank at the time he drew therefrom $25,250 (if indeed such a representation was made or so understood by plaintiff) would have any bearing on the case, since the relief here sought is an escape from the obligations of his well understood written contract, and its cancellation so as to relieve him of what he conceived to be a binding unexecuted obligation to pay the additional $10,000 which he agreed to do. But that part of plaintiff's unexecuted contract was clearly based upon the necessarily inferred consideration that the bank continue as a going concern, and that its obligatory force would die upon the death of the bank. If it ceased to be such before that deferred payment was made, then the promise to make it became cancelled without a court adjudication to that effect, since, as is clearly seen, the promise was only for the purpose of sustaining the financial vitality of the bank in order that it might continue to function as such. Therefore, plaintiff failed to aver any legal ground of action on that phase of his pleading and the relief sought thereby.

It was also averred by plaintiff that he would not have signed the contract had it not been for the false

(as he alleged)' representation of the consulted attorney, and for which reason he seeks to escape all of the obligations he assumed as a member of the "parties of the third part" therein. To begin with it is extremely doubtful if an attorney occupying the position of consultant in the circumstances outlined would, by virtue of his employment as such, have the authority to bind his clients in any such manner. But waiving that question—and proceeding upon the theory that he was so authorized—then the alleged representation made by him was in truth and in fact the law governing the situations to which his representation was directed. It might be true that this court had not at that time decided the question in a case based upon the identical facts of this one, but in a number of cases it had decided the legal principle as represented by the attorney, if indeed he made such representation. Section 1910, supra, of our Statutes prescribes that a preferment by a debtor of a particular creditor in contemplation of insolvency may be set aside and the preferred creditor made to account for the amount of his preference, and the estate of the debtor be wound up under assignment statutes for the benefit of creditors, the preferred payments being considered as a part of the debtor's assets for distribution amongst his or its creditors. This rule applies to withdrawals from insolvent banks through payment of checks issued by depositors when the circumstances are such as to create the belief on the part of the depositor that the bank is in an insolvent and shaky condition, as is shown in the text of 7 Am. Jur. page 519, Section 717, and which principle of law we followed in the case of Ball v. Tipton, 242 Ky. 181, 45 S. W. (2d) 1044, and in the same case on a second appeal reported in 256 Ky. 816, 77 S. W. (2d) 50.

We are clearly convinced that the facts and circumstances of this case bring plaintiff's withdrawal of his deposit within the purview of the statute and obligated him to return it if called upon to do so through proper proceedings taken under the statute. See Baker v. Kinnaird, 94 Ky. 5, 21 S. W. 237, 14 Ky. Law Rep. 695. The assignment through the operation of law of the assets of a debtor in such circumstances, whereby an assignee for the benefit of creditors would have the right to proceed under Section 1910 of our Statutes, became vested in the state banking department after the enactment of

that statute, as was held in the Tipton cases supra, and from all of which the conclusion is inescapable that the attorney made no false representation as charged by defendant, even if it was made by him and considering that he had authority to bind his clients in making it.

The next question to be determined is the case alleged against the defendant, Lampton. His guaranty agreement as charged in the petition must be considered as an oral one . It was clearly one to answer for the debt, default or miscarriage of another, and by our Statute of Frauds, Kentucky Statutes, Section 470, Subsection 4, it is required to be in writing, signed by the party to be charged before it can be enforced. Plaintiff's counsel cite the domestic case of Creel v. Bell, 2 J. J. Marsh. 309, as sustaining the proposition that Lampton's alleged agreement was not one forbidden by the Statute of Frauds unless it was in writing; but when that case is examined it clearly shows that the party to be charged in that case was one who had assumed the debt of another and became liable under the "novation" principle of law, and none of the other cases cited by counsel in avoidance of the Statute of Frauds support the argument that Lampton's alleged contract was not governed by that statute. Moreover, Lampton's promise was *not* that he agreed to become the unqualified guarantor that plaintiff would be recompensed for any deposit made by him pursuant to the written agreement signed by him, but *only* that plaintiff would "get his money back, and would not lose a cent," which, of course, meant a loss after the terms of the signed contract had been followed, and which nevertheless failed to raise sufficient funds to repay plaintiff his deposit. There is no allegation that an assessment of the stockholders on their double liability would not raise sufficient funds for that purpose, nor is there anything to show that if the terms of the signed agreement were carried out plaintiff would then sustain a loss of any amount whatever. Clearly, plaintiff—even if Lampton's alleged contract of guaranty could be legally enforced—before proceeding against him on the guaranty, would be required to allege, and prove if denied, that the provision for the recoupment of his deposit had been followed and a loss sustained by him, in which event if Lampton's contract was an enforceable one, recovery for the balance of the deposit only could be had, since

712

it was only to that extent and in such event that the alleged guaranty of Lampton promised to reimburse plaintiff. That conclusion is inevitable, since no recovery can be had on the guaranty contract except in accordance with its terms.

We believe that we have considered all of the material questions raised, but if not they may be disposed of by surveying the case as one that plaintiff, as the largest stockholder in the bank, was evidently much interested and greatly concerned about its anemic condition, which because of that outstanding fact appeared to have been known and fully recognized by everybody except plaintiff as its largest stockholder. Therefore, the interested parties put their heads together and in conference devised the plan that was followed, which appears to have kept the bank going for an additional six months, and apparently to the delight of everyone concerned. But when, notwithstanding such heroic efforts, it became evident that the patient must die, and plaintiff was confronted by the possibility of the loss of all or at least a part of his deposit, and also with the possibility of assessments upon the large amount of stock held by him, he then concluded that at the beginning of the previous six months he was defrauded by false representations and otherwise duressed into signing the agreement which he by this action attacks. He, therefore, filed this action asking the court to lift the load from his shoulders on the grounds alleged in his petition, but which the trial court concluded was insufficient in law to authorize it to come to his aid, and with which conclusion we coincide.

Wherefore, for the reasons stated, the judgment is affirmed.

The whole Court sitting, except Judge Perry, who was absent.